McBRIDE, Judge.
Margaret Thompson Brown of Chicago, Illinois, in this habeas corpus proceeding is endeavoring to regain possession of her illegitimate son, Ronald Lee Brown, born January 13, 1952, who is now living with Leon and Corinne Ellison of New Orleans. The child is now known by the name of Ronald Lee Ellison.
After a trial of the case as presented by the allegations of the petition and the answer of respondents, the judge below maintained the writ of habeas corpus and ordered the defendants to immediately release the child to plaintiff. Defendants have appealed.
Plaintiff was formerly a resident of the City of New Orleans and lived here with her husband, Irvin Brown; three children are issue of the marriage, all born in New Orleans; in 1945 the parties separated, plaintiff taking the children. In 1949 or 1950 she left for Chicago, there to make her home, leaving her three children in the custody of her mother at Clinton, Louisiana. She has never obtained a divorce from her husband.
*806 The child involved in this suit, Ronald Lee Brown, was born in Chicago, issue of an adulterous union between plaintiff and Andrew Johnson; she has another illegitimate child named Antonio Brown, whose father is Andrew Thompson. This latter child was five years old at the time of the trial below.
In 19SS, while in financial difficulties, Margaret Thompson Brown surrendered possession of Ronald Lee Brown to the defendants herein (Corinne Ellison went from New Orleans to Chicago to receive the child), this arrangement, according to plaintiff, being of a temporary nature until she could better her situation. Leon Ellison is plaintiff’s cousin and Corinne Ellison is the child’s godmother.
Plaintiff stated that Corinne Ellison promised to bring Ronald back to Chicago “during the summer” but instead of doing so, she took the boy with her on a visit to California.
It does not appear that plaintiff abandoned the child wilfully; on the contrary, she gave the boy to defendants for the good of the child and with the hope and intention of bettering her own condition so that she might in the future regain possession of and adequately support the child. The record shows that she manifested great interest in the child and made efforts to regain his custody from defendants but without success. She came to New Orleans in 1959 and had difficulty in locating defendants since they had moved from their former home without notification to her. When she did contact the Ellisons, plaintiff states that Corinne Ellison refused to permit her to take the child until she would agree to pay $1,000 in cash. Plaintiff also sought the help of a priest at the church school in New Orleans attended by the child and had him intercede for her in an endeavor to secure the boy, but the Ellisons were adamant in their refusal to surrender him. Plaintiff further related that she, accompanied by a friend, went to the school to attempt a forcible taking of the child, but that this effort failed because Ellison appeared on the scene and the boy, plaintiff, and her friend went to his house where he reiterated that plaintiff could not have the child. Plaintiff also stated that Corinne Ellison warned her that she would be shot if she ever came to her house.
Plaintiff previously had brought a habeas corpus proceeding against defendants in the Civil District Court (in 1961), but the trial judge denied plaintiff the right of custody for the reason that he was not satisfied that she was a person of good moral character because of her admitted adulteries. Plaintiff was informed by the court that it would be necessary for her to make a showing that she had mended her ways and was a fit person before the child could be returned to her.
We are convinced from the record that plaintiff has turned over a new leaf and is presently leading an honorable life in Chicago. She is devoutly religious. Her employment is that of “pantry maid” in a restaurant at a wage of $60 per week. She is the lessee of a three bedroom apartment in a housing project and two of her children, who were formerly with her mother in Clinton, Louisiana, reside with her as does the youngest child who is the issue of Andrew Thompson. She states her two oldest children are working and aid in supporting the household and that harmony prevails and they are happy in their environment. There is not one word in the record countervailing or discounting any of this. There is no question in our minds that plaintiff dearly loves her child and that she is sincerely desirous of having him in her household with the other children.
On the other hand, we are also convinced that the Ellisons, who are childless, love the boy as though he were their own. At this time they seem to be respectable people, he being a longshoreman and she working in a doctor’s office. The child attends school regularly and his welfare has been well looked after. The only thing that can *807 be said against the Ellisons is that they lived together for about five years as man and wife before their marriage some years ago.
Unquestionably both Margaret Thompson Brown and the Ellisons are physically able to take care of the boy and are morally fit to have him. Consequently, there is presented in this case the sole question whether under the facts and circumstances appearing in the record it would be to the best interest of the child to permit him to remain in possession of the Ellisons or to return him to his mother.
 It may be that the child would rather remain with his foster parents than to live with his mother, but this circumstance should not be taken into consideration when awarding custody in a case where the parent is as equally fit to have the custody. We all know that young minds are easily influenced and respond to love and kindness and that one of tender years readily adjusts to changed circumstances. Our opinion is that this boy in his own family unit in Chicago will, after a passage of a few months, be as happy as he is now with the defendants, and by every right his mother is entitled to regain his custody. The law in this state is plain that under the natural law, as well as under our statutes and jurisprudence, the custody, control and guardianship of a child belongs to the mother and father, and courts are reluctant to interfere with this paternal right and authority except when satisfied the parents will neglect them or expose them to improper influences. Dungan v. Dungan, 239 La. 733, 119 So.2d 843; State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888; State ex rel. Munson v. Jackson, 210 La. 1, 26 So.2d 152; State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760.
The mere fact that a mother in financial difficulties surrenders her child temporarily to a member of her family or to a friend during the time of such difficulties would not be a ground for stripping the parent of the right to reclaim the child when her situation changes for the better. State ex rel. Kearney v. Steel, 121 La. 215, 46 So. 215; State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8.
For the above and foregoing reasons, the judgment appealed from is affirmed.
Affirmed.