1504

The HUSBAND, Respondent v. The WIFE, Appellant.[1]
(392 S.E. (2d) 811)

Court of Appeals

*J. Redmond Coyle* and *R. Murray Hughes*, Pickens, *for appellant.*

---

[1] Because we do not want to cause this family any further pain, we have omitted the names of the mother and father, as well as the names of the children. *Cf. South Carolina Dept. of Social Servs. v. the Father and Mother*, 294 S.C. 518, 366 S.E. (2d) 40 (Ct. App. 1988); *Doe v. Doe*, 286 S.C. 507, 334 S.E. (2d) 829 (Ct. App. 1985) (cases in which we omitted the true names of the parties from our opinion).

*R. Scott Dover*, Pickens, *for respondent.*

Heard April 16, 1990.

Decided May 29, 1990.

SANDERS, Chief Judge:

This is a sordid story. The husband sued the wife for a divorce on the ground of adultery. He also asked for custody of their two sons.[2] The trial judge decided the wife was guilty of adultery, but he did not give the husband a divorce on this ground. Rather, he gave the wife a divorce on the ground of physical cruelty. He did, however, give the husband custody of the children. The wife appeals. We affirm.

In this case, we can decide on our own what the facts are, but we do not have to ignore what the trial judge decided.[3] After all, he saw and heard the witnesses and was, therefore, better able to know who was telling the truth.[4]

The wife presents two questions for us to answer. The first question is: "Did the trial court err in determining that the wife was guilty of adultery?[5] The following is a fair summary of the important facts on the issue of adultery.

The hours kept by the wife can best be characterized as

---

[2]A third child, a daughter age seventeen, wanted to live with the wife. She has since turned eighteen, and her custody is not an issue in this case.

[3]*See Perry v. Perry*, 390 S.E. (2d) 480, 481 (S.C. Ct. App. 1990). ("The Court of Appeals has jurisdiction in a divorce case to find facts based on its own view of the preponderance of the evidence; however, it is not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to evaluate their testimony.")

[4]*Id.*

[5]It may be difficult to see how the wife was prejudiced by the determination that she was guilty of adultery. As we have said, the divorce was granted on another ground. "No alimony shall be granted an adulterous spouse." S.C. Code Ann. § 20-3-130 (1985). But, alimony is not an issue in this case. At oral argument, counsel for the wife said he feared that the fact she had been found guilty of adultery might somehow prejudice her on the issue of custody. "[W]hile a parent's morality is a proper factor for consideration in a child custody case, it is limited in its force to what relevance it has, either directly or indirectly, to the welfare of the child." *Boykin v. Boykin*, 296 S.C. 100, 102, 370 S.E. (2d) 884, 885 (Ct. App. 1988). In deciding who should have custody of the children, we have not considered the fact that the wife was determined to be guilty of adultery. We nevertheless address the issue of adultery, assuming without deciding that prejudice is inherent in being branded with "The Scarlet Letter." *See* N. Hawthorne, *The Scarlet Letter* (1850) (describing how, at one time, persons convicted of adultery were required to wear the letter A in scarlet cloth).

"odd." She worked until the wee hours of the morning. She would come home, get dressed, and leave again, not returning until just before the children left for school. At least twice, she rented a motel room for the night. Once, two days before Christmas, she checked into a motel, checked out the same day, checked back in later that day, and stayed until Christmas Eve. She explained that she did this because she wanted to be alone. But the husband testified he and the children were out of town at the time. Then there was the matter of the duffle bags in her car. The husband noticed one of the bags contained a number of personal items, including nightgowns, pajamas and underpants. He noticed the other bag contained condoms, things people do not usually carry with them when they want to be alone. The husband testified she admitted sleeping with a man in the motel but denied anything "took place between her and him." He did not believe her denial. Nor did the trial judge. Nor do we.[6]

The second question presented by the wife is: "Did the ■ trial court err in awarding custody of the children to the husband?" The essential facts on the issue of custody may be summarized as follows.

The husband has had primary custody of the children since he and the wife separated. He lives with his mother who helps him take care of them. They have been well cared for during this period. He loves them. In deciding who should have their custody, the best interests of the children come

---

[6]To be sure, the wife had an explanation for all the evidence against her. For example, she said she put the condoms in the duffle bag as a practical joke. The mistreatment she received at the hands of the husband may very well excuse her behavior. But that is not for us to decide. We are asked simply to decide if she was guilty of adultery. Proof of adultery "must be clear and positive, and the infidelity must be established by a clear preponderance of the evidence." *McLaurin v. McLaurin*, 294 S.C. 132, 133, 363 S.E. (2d) 110, 111 (Ct. App. 1987). The proof in this case meets the required standard. "[A]dultery may be proven by circumstantial evidence showing inclination and opportunity to commit adultery." *Panhorst v. Panhorst*, 390 S.E. (2d) 376, 377 (S.C. Ct. App. 1990). "The same evidence which proves the opportunity can also prove the disposition. For example, where a married man is observed going upstairs in a bawdyhouse, unless something to the contrary appears, no other evidence is required to warrant a finding of adultery." *Prevatte v. Prevatte*, 297 S.C. 345, 351, 377 S.E. (2d) 114, 118 (Ct. App. 1989). The same may be said where a married woman spends the night in a motel, sleeping with a man to whom she is not married.

first.[7] The wife has tended to put her rather active social life first.[8] Even before she took a night job, she stayed out several nights a week playing bridge. The question of who should have custody of children is normally left to the discretion of the trial judge.[9] Although we believe the wife also loves the children and that she is a fit parent, we are not convinced the trial judge abused his discretion. The wife will, of course, have the liberal rights of visitation granted her by the trial judge.[10] This way, the children can have the benefit of being cared for by two parents, both of whom love them.

For these reasons, the decision of the trial judge is

Affirmed.

GARDNER and CURETON, JJ., concur.

---

[7]*See Moore v. Moore*, 300 S.C. 75, —, 386 S.E. (2d) 456, 458 (1989) ("The best interest of the child is the primary and controlling consideration of the Court in all child custody controversies.").

[8]As we have said, in deciding the issue of custody, we have not considered the morality of the wife. We have, however, considered her behavior generally as it affects the welfare of the children. *Cf. Boykin*, 296 S.C. 100, 370 S.E. (2d) 884 (in deciding the issue of custody, the Court considered the fact that the mother, after working until midnight, drank beer and, on occasion, smoked marijuana until the early morning hours).

[9]*See Ariail v. Ariail*, 295 S.C. 486, 489, 369 S.E. (2d) 146, 148 (Ct. App. 1988) ("The issue of child custody is a matter largely within the discretion of the family court.").

[10]The trial judge granted the wife visitation with the children every other weekend from 5 p.m. Friday until 5 p.m. Sunday, and for a three-week period during the summer. He also granted her visitation for five days at Christmas, on alternating Thanksgiving holidays, and on the birthdays of the children.