The South Carolina Court of Appeals

 
 
 
Ricky and Tammy Polson, Appellants,
v.
William and Wendy Johnson, Respondents.
 
 
 

The Honorable Jane D. Fender
Spartanburg County
Trial Court Case No.   2003-DR-41-03900

ORDER 

PER CURIAM:  On June 23, 2006, this court issued Opinion No. 2006-UP-292, which reversed the order of the family court and remanded the matter for further proceedings.  Respondent William Johnson has filed a petition for rehearing in this case.  Appellants Ricky and Tammy Polson have moved to expedite the docketing of the petition on the ground that one of the children will be starting school in August 2006 and this circumstance warrants a prompt resolution of the matter.  
We grant Appellants motion for expedited docketing of the petition for rehearing.  After careful consideration of the petition for rehearing, we order that Opinion No. 2006-UP-292, filed in this appeal on June 23, 2006, be withdrawn and the following opinion substituted therefore.  Notwithstanding this substitution, we have not discovered any material fact or principle of law that has been either overlooked or disregarded.  Because we find no basis to support a rehearing, we deny the petition.  
Pursuant to Rule 16, SCRFC, the family court has continuing jurisdiction to address further concerns from any party in this matter. 
AND IT IS SO ORDERED.

 
 
 
 _____Kaye G. Hearn,             
 C.J.
 
 _____C. Tolbert Goolsby,       
    J.
 
 _____Ralph King Anderson, Jr., J.
 
 

Columbia, South Carolina
Date:  ___July 26, 2006____
THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Ricky and Tammy Polson, Appellants,
v.
William and Wendy Johnson, Respondents.
 
 
 

Appeal From Spartanburg County
 Jane D. Fender, Family Court Judge

Unpublished Opinion No. 2006-UP-292
Submitted June 1, 2006  Filed June 23, 2006
Withdrawn, Substituted and Refiled July 26, 2006

REVERSED AND REMANDED

 
 
 
James Fletcher Thompson, of Spartanburg, for Appellants.
Philip W. Jamieson, of Rock Hill,  for Respondents.
 
 
 

PER CURIAM:  Ricky and Tammy Polson (the Polsons) appeal the grant of custody of their two grandchildren to William Johnson.  We reverse and remand.[1]  
FACTS
Johnson married the Polsons daughter, Wendy, on October 31, 2001.  On November 7, 2001, Wendy gave birth to Hannah. 
The Polsons believed Hannahs biological father was Chad Edwards.  They advised Wendy to name Edwards as the father on Hannahs birth certificate; however, a health department employee informed the family the birth certificate had to name Johnson as the father because he and Wendy were legally married at the time of Hannahs birth.    
Wendy and Hannah lived with the Polsons for several months after Hannah was born.  Apparently, this living arrangement came about so the Polsons could help with child care while both Wendy and Johnson were working.  During this time, Wendy would go home with Johnson on her days off and, at times, Johnson, with the Polsons consent, would stay at their home to be with Wendy.  In February 2002, Wendy and Hannah moved back to their home with Johnson.
On July 13, 2002, police were called to Johnsons house and charged him with criminal domestic violence for striking Wendy.  After the incident, Wendy and Hannah went to live with the Polsons.  While they were staying with the Polsons, Johnson persuaded Wendy to drop the charges against him.  Wendy and Hannah returned to live with Johnson on December 29, 2002.
Wendy gave birth to a second child, Sarah, on August 17, 2003.[2]  Hannah and Sarah lived with Johnson and Wendy until November 7, 2003, when, after Hannahs second birthday party, Wendy and Johnson again became entangled in another altercation.  As a result of the incident, Wendy was charged with criminal domestic violence and taken to a hospital for a psychiatric evaluation.  While Wendy was away from the family for her evaluation, Johnson sent Sarah to live with his sister in Pennsylvania and sent Hannah to live with the Polsons. 
Approximately two weeks later, Wendy was released from the hospital and took Hannah from the Polsons home to live with her and Johnson.  Upon her return, Johnson informed Wendy that he was going to Pennsylvania to retrieve Sarah from his sister.  Wendy did not want Johnson to leave, and this dispute resulted in another physical incident between them.  About a week after this incident, after Johnson informed the Polsons that Wendy was acting up, the Polsons brought Hannah to their home.  Shortly after Hannah went to live with the Polsons, Wendy also moved in with them.  
Sarah remained in Pennsylvania with Johnsons sister while the Polsons commenced separate actions seeking custody of Hannah and Sarah.  By order dated January 9, 2004, the family court consolidated the actions under a single docket number and granted the Polsons temporary custody of both Hannah and Sarah. 
The final hearing took place July 19, 2004.  On August 25, 2004, the family court issued an order in which it found Johnson to be the father of both children.  Based on the investigation by the guardian ad litem, the court also found Johnson was a fit parent.  Noting Wendys testimony that she was not capable of caring for the children and the absence of any showing that Johnson was an unfit parent, the court concluded the Polsons lacked standing to claim custody and it was in the best interests of Hannah and Sarah that they be placed in Johnsons custody. 
The Polsons submitted post-trial motions under Rules 59(e) and 60 of the South Carolina Rules of Civil Procedure.  On December 6, 2004, the family court heard argument on the motions.  By order dated January 4, 2005, the family court made a finding that Johnson is not the biological father of Hannah Lee Johnson and granted Wendy, who was incarcerated at the time of the final hearing, visitation with the children whenever allowed by the jail and someone can take them there to see her; however, the other provisions of the prior decision were left intact.   
STANDARD OF REVIEW
In appeals from the family court, this court may find facts according to its own view of the preponderance of the evidence,[3] but this broad scope of review does not require us to disregard the family courts findings.[4]  We need not, however, decide whether the evidence supports the family courts findings of fact when these findings are so tainted by
errors of law as to require us to reverse the courts decision and remand the case for a new hearing.[5]
LAW/ANALYSIS
1.  We agree with the Polsons that the family court erred in its application of the presumption of legitimacy to hold Johnson is Hannahs father because he and Tammy were married at the time of her birth. 
The presumption of legitimacy, although rebuttable, is one of the strongest known to the law.[6]  A child born in lawful wedlock is presumed to be legitimate; however, clear evidence that it was impossible for the husband to have been the father of the child can rebut this presumption.[7]
We agree with the Polsons that they presented clear evidence to rebut the presumption that Johnson is Hannahs father.  Ricky Polson testified at trial that Wendy was in a relationship with Chad Edwards at the time she became pregnant with Hannah and did not begin a relationship with Johnson until a later time.  Although Edwards never took a paternity test and died before the final hearing, the Polsons and Edwardss mother testified to their belief that Edwards was Hannahs biological father.  Edwards was at the hospital when Hannah was born, and, even after his death, his family continued to acknowledge Hannah, visit her, and give her gifts.  Wendy herself told Tammy Polson Edwards was Hannahs father.  No one, including Johnson himself, offered any testimony to challenge these assertions.  Moreover, the Polsons presented an e-mail Johnson had sent to them shortly after Hannahs birth in which he seemed to admit he was not Hannahs biological father and asserted he would never fight for Hannah if he and Wendy ever separated as long as he did not have to pay child support for Hannah. 
2.  Based on the foregoing, we hold the family court, in determining who should have custody of Hannah, incorrectly required the Polsons to prove Johnson was an unfit parent.[8]  In determining who should be granted custody of Hannah, the family court should have based its determination on whether it was in Hannahs best interest to live with the Polsons or with Johnson rather than whether Johnson was a fit parent.[9]  In other words, the family court should have used a best interest of the child standard as between two third parties and not as between a parent and a third party.
3.  We also agree with the Polsons that, in determining who should receive custody of Sarah, the family court failed to apply the test the supreme court adopted in Moore v. Moore.[10]
In Moore, the supreme court acknowledged a rebuttable presumption that it is in the best interest of any child to be in the custody of its biological parent.[11] Notwithstanding this presumption, however, the court recognized that [t]he best interest of the child is the primary and controlling consideration of the Court in all child custody controversies.[12] 
In balancing these two principles, the court stated that, at least with respect to parents who relinquish custody of their children to third parties and seek to regain custody at a later time, [t]he rebuttable presumption standard requires a case by case analysis.[13]  In addition, the court set forth the following criteria to be considered in custody determinations when a parent seek to reclaim custody from a third party:  (1) the parents fitness and ability to care for the child and provide a good home; (2) the amount of contact, in the form of visits, financial support, or both, that the parent had with the child while the child was in the third partys care; (3) the circumstances under which the parent relinquished custody; and (4) the degree of attachment between the child and the third-party custodian.[14]
The appealed order addresses only the first criterion, but fails to make findings of fact concerning the remaining three factors.  Given the compelling arguments by both sides as to the salient facts in the application of a Moore v. Moore analysis to this case and our consensus that the strengths of these arguments depend largely on credibility determinations, we decline to make our own findings regarding who should have custody of Sarah.  Accordingly, we reverse family courts decision to grant custody of Sarah to Johnson and remand this issue to the family court.
CONCLUSION
We reverse the family courts finding regarding Hannahs paternity and hold there was clear evidence to rebut the presumption that Johnson is her father.  Because this holding impacts the determination of who should receive custody of Hannah, we reverse the grant of custody of Hannah to Johnson and remand this issue to the family court.  On remand, the family court shall apply a best interest of the child standard in determining whether to grant custody of Hannah to Johnson or to the Polsons.  We also reverse the family courts decision to award Johnson custody of Sarah and remand this issue for a Moore v. Moore analysis.
As a result of our reversal of the family courts decisions regarding custody of Hannah and Sarah, temporary custody of both children will resume with the Polsons pursuant to the temporary order of January 9, 2004, and continue while the remand is pending.  
The Polsons raise several other issues for this court to consider on appeal, including newly discovered evidence concerning Johnsons fitness as a parent and their request for visitation in the event that custody continues with Johnson.  Because of our disposition of the case, we do not address these issues.  On remand, however, the family court may consider any new evidence properly before it, including testimony concerning developments since the final merits hearing and the advisability of separating the children from each other.[15]
 REVERSED AND REMANDED.
HEARN, C.J., and GOOLSBY and ANDERSON, JJ., concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2] A paternity test has confirmed Johnson is Sarahs biological father.
[3]  Lanier v. Lanier, 364 S.C. 211, 215, 612 S.E.2d 456, 458 (Ct. App. 2005).  
[4]  Id.
[5]  Callen v. Callen, 365 S.C. 618, 623-24, 620 S.E.2d 59, 62 (2005).
[6]  Barrs Next of Kin v. Cherokee, Inc., 220 S.C. 447, 464, 68 S.E.2d 440, 447 (1951), superseded by statute for separate issue of law, S.C. Code Ann. § 20-7-956 (1985 and Supp. 2005).
[7]  Brown v. Ryder Truck Rental, 300 S.C. 530, 534, 389 S.E.2d 161, 163 (Ct. App. 1990).
[8]  See Kay v. Rowland, 285 S.C. 516, 517, 331 S.E.2d 781, 781-82 (1985) (stating there is a presumption that a natural parent, unless unfit, will prevail over a third party for custody of a child).  
[9]  During the hearing on the Polsons post-trial motions, an affidavit from the guardian ad litem was submitted in which he recounted that the family court in chambers, before the call of the case, instructed counsel that the custody decision would be based on Johnsons fitness and not the best interest of the child standard and that he believed it is in the best interest of both children that they be placed with the Polsons.
[10] 300 S.C. 75, 386 S.E.2d 456 (1989).
[11] Id. at 79, 386 S.E.2d at 458. 
[12] Id. at 78-79, 386 S.E.2d at 458 (emphasis added).
[13] Id. at 80, 386 S.E.2d at 458.
[14] Id. at 80, 386 S.E.2d 458-59.
[15] See, e.g., Cole v. Cole, 274 S.C. 449, 454-55, 265 S.E.2d 669, 671 (1980) ([T]o punish all four children . . . by dividing custody [two older siblings with one parent and two younger siblings with the other parent] and removing the younger ones from their now accustomed environment . . . is no solution and contrary to the childrens best interest, the paramount consideration.).