**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Robert Lester, Jr., Respondent,

v.

Marco and Timea Sanchez and Eva Sanchez, Defendants,

Of whom Marco and Timea Sanchez are the Appellants.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2015-000027

———————————

Appeal From York County
Wayne M. Creech, Family Court Judge

———————————

Unpublished Opinion No. 2017-UP-241
Submitted March 1, 2017 – Filed June 14, 2017
Withdrawn, Substituted, and Refiled August 30, 2017

———————————

**AFFIRMED**

———————————

Thomas Franklin McDow, IV, and Erin K. Urquhart, both of McDow and Urquhart, LLC, of Rock Hill, for Appellants.

Joshua Brian Mitchell, of Rock Hill, for Respondent.

James Wilson Tucker, Jr., of Rock Hill, as Guardian ad Litem.

_____

**PER CURIAM:** Marco and Timea Sanchez (collectively, Grandparents) appeal the family court's order awarding custody of a six-year-old girl (Child) to Robert Lester, Jr. (Father).  On appeal, Grandparents argue the family court erred in (1) not finding they were Child's psychological parents or de facto custodians, (2) finding Father and Shelia Hartsell credible, (3) considering Grandparents' affair when determining whether they should be awarded custody of Child, (4) finding custody with Father would be in Child's best interest, (5) giving undue weight to Grandparents' move from Rock Hill to Hilton Head, and (6) awarding Guardian ad Litem (GAL) fees in excess of the cap previously set by the family court.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

Contrary to Grandparents' assertion, we find psychological parents are not on equal footing with parents in a custody dispute.  In *Middleton v. Johnson*, this court adopted a test for determining whether a person is a psychological parent.  369 S.C. 585, 596-97, 633 S.E.2d 162, 168 (Ct. App. 2006).  In *Marquez v. Caudill*, our supreme court approved the *Middleton* test, determined a stepfather was the child's psychological parent, and awarded custody to the stepfather instead of the child's grandmother.  376 S.C. 229, 244-45, 656 S.E.2d 737, 744-45 (2008).  In doing so, our supreme court cautioned, "It must be remembered that this is a custody action between a stepfather and a grandmother.  A biological parent is not involved; and therefore, there is no reason to recognize the superior rights of a natural parent in this case."  *Id*. at 245, 656 S.E.2d at 745.  Based on this cautionary language, we find our supreme court did not intend the psychological parent doctrine to overrule the "rebuttable presumption that it is in the best interest of any child to be in the custody of its biological parent."  *Moore v. Moore*, 300 S.C. 75, 78-79, 386 S.E.2d 456, 458 (1989).  Because psychological parents are not on equal footing with biological parents, we need not decide whether the family

court erred in not finding Grandparents were Child's psychological parents.[1]  *See McCall v. Farley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("[W]hatever doesn't make a difference, doesn't matter.").

---

[1] We find Grandparents' argument regarding the de facto custodian statute is not preserved.  Although Grandparents sufficiently pled they were de facto custodians in their answer and counterclaim, the family court did not rule on that issue in its final order.  In their motion to reconsider, Grandparents asserted "[t]he family court erred in placing excessive weight or in not considering in an appropriate context" several facts, including:

> In reference to the mother and father entrusting [Child's] care to the grandparents, "There is no evidence that at that time their intention was for [Marco] or Timea to become a parent."  The law presumes that people intend the natural consequence of their acts.  "One is presumed to intend the natural consequences of her action."  The mother and father put in to motion the events that led to the grandparent[s] becoming de facto and psychological parents.  The natural consequences of [Father's] action— or inaction—were for the grandparents to care for [Child] and establish a de facto or psychological parent relationship.  The law, and common sense, assume this is what he fostered and intended.

This is the only place in the motion that uses the phrase de facto custodian or that can be construed as requesting a ruling on that issue.  However, this section challenges the family court's ruling that Eva Sanchez (Mother) and Father did not intend Grandparents to become Child's psychological parents—a ruling the family court made when determining whether Grandparents were psychological parents, and a ruling that is inapplicable to a determination of whether Grandparents were de facto custodians.  Because the court did not rule on whether Grandparents were de facto custodians and Grandparents did not request a ruling on that issue, this argument is not preserved.  *See Elam v. S.C. Dep't of Trans.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) ("A party *must* file [a Rule 59(e), SCRCP] motion when an issue or argument has been raised, but not ruled on, in order to preserved it for appellate review."); *Buist v. Buist*, 410 S.C. 569, 574-75, 766 S.E.2d 381, 383-84 (2014) ("While 'a party is not required to use the exact name of a legal doctrine in order to preserve the issue,' the party nonetheless must be sufficiently clear in framing his objection so as to draw the court's attention to the precise nature of the

Under the test set forth in *Moore*, we find the family court properly determined custody with Father was in Child's best interest.  First, the evidence showed Father was fit.  *See Moore*, 300 S.C. at 79, 386 S.E.2d at 458 (providing the first factor a court should consider when a biological parent seeks to regain custody from a third party is whether the biological parent is fit and "able to properly care for the child and provide a good home").  Father's mother and aunt testified Father had matured considerably, and even Timea admitted Father "got better" after his other child was born.  The evidence showed Father earned $10 per hour and worked forty to sixty hours per week, maintained a clean and suitable home where he had resided for three years, and provided for his other child.  We find the foregoing established Father was fit to have custody of Child.

Next, we find Father maintained regular visitation with Child and supported her regularly.  *See id*. (providing the second factor a court should consider is the amount of contact the parent maintained with the child).  Although the record contains conflicting evidence about Father's visitation prior to Child's second birthday, Grandparents acknowledged Father visited regularly thereafter.  Further, Father provided child support after the family court ordered it, and Marco acknowledged he refused Father's offers of support before that time.  We find the foregoing showed Father maintained contact with Child.

Third, we find the circumstances under which Grandparents obtained custody showed Father was reasonable in allowing them to care for Child at the time.  *See id*. (providing the third factor a court should consider is "[t]he circumstances under which temporary relinquishment occurred").  Father was a teenager when Child was born, and Marco obtained legal custody of Child during Mother's juvenile delinquency action.  Marco admitted Father was not aware of the prior order awarding Marco custody until around the time Father filed the underlying custody action.  Marco also admitted he told Father he did not want to parent Child but would support her until Father became stable.  Based on Father's young age, we find it was reasonable for Father to accept Marco's offer to care for Child while Father obtained an education.  We further find the parties' initial agreement was thwarted by Grandparents' desire to move to Florida—a decision Father had no role in making.  Overall, we find Father's young age at the time of Child's birth and his need to obtain an education made it reasonable for Father to allow Child to remain in Grandparents' custody prior to filing this custody action.

alleged error." (quoting *Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011))).

Fourth, although Child was bonded to Grandparents, we find Child's attachment to Grandparents did not override the presumption that it was in Child's best interest to be in Father's custody. *See id.* at 80, 386 S.E.2d at 458 (providing the fourth factor a court should consider is "[t]he degree of attachment between the child and the temporary custodian"); *id.* at 79, 386 S.E.2d at 458 ("[T]here is a rebuttable presumption that it is in the best interest of any child to be in the custody of its biological parent."). Child knew Father was her biological father, and Child had a relationship with Father and his family. Father began regularly visiting Child when she was one-and-a-half to two years old. Father was a teenager when Child was born, but the testimony showed he had established a stable and adequate home and could provide for Child by the time of the final hearing. Further, Child had extensive family in Rock Hill, where Father lived, whereas she did not have extended family in Hilton Head; even Timea admitted Child needed her extended family. Based on the *Moore* factors, we find Grandparents did not overcome the rebuttable presumption that custody with Father was in Child's best interest.[2]

Finally, we find Grandparents' argument regarding the GAL fee is not preserved because the argument raised in the motion to reconsider was not sufficient to put the argument before the court. *See Buist*, 410 S.C. at 574-75, 766 S.E.2d at 383-84 (2014) ("While 'a party is not required to use the exact name of a legal doctrine in order to preserve the issue,' the party nonetheless must be sufficiently clear in framing his objection so as to draw the court's attention to the precise nature of the alleged error." (quoting *Herron*, 395 S.C. at 466, 719 S.E.2d at 642)). Although the record indicates the motion for reconsideration was the first opportunity Grandparents had to raise this issue, Grandparents were not "sufficiently clear in framing [their] objection so as to draw the court's attention to the precise nature of the alleged error." *Id.* at 575, 766 S.E.2d at 383-84. In their motion, Grandparents simply stated, "The [p]retrial order . . . raised the cap on the guardian's fee to $7,500." The record contains no indication Grandparents further argued this issue during the reconsideration hearing. Thus, although the motion for reconsideration was the first opportunity Grandparents had to raise this argument, they did not sufficiently raise it in their motion, and it is therefore not preserved. *See id.* at 575, 766 S.E.2d at 384 ("If the party is not reasonably clear in his objection to the perceived error, he waives his right to challenge the erroneous ruling on appeal.").

---

[2] We decline to address Grandparents' remaining arguments regarding custody. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when a prior issue is dispositive).

**AFFIRMED.**[3]

**WILLIAMS and KONDUROS, JJ., and LEE, A.J., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.