**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Erika Fields and William Fields, Appellants,

v.

Ashli Fields and Barbaree "Bob" Rapley, Respondents.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2024-000686

―――――――――――

Appeal From Dorchester County
Rosalyn Frierson-Smith, Family Court Judge

―――――――――――

Unpublished Opinion No. 2025-UP-199
Heard June 4, 2025 – Filed June 9, 2025

―――――――――――

**AFFIRMED**

―――――――――――

Leslie Therese Sarji, of Sarji Law Firm, LLC, of Charleston, for Appellants.

Stephen L. Hudson, of Law Offices of Stephen L. Hudson, PC, of Columbia, for Respondent Barbaree Rapley.

Ashli Fields, Self Represented.

Sharon Lovette, Guardian ad Litem.

_____

**PER CURIAM:**  This appeal arises from the family court's order granting custody to Minor Child's biological father, Barbaree Rapley (Father).  Appellants, William and Erika Fields, are Minor Child's maternal grandfather and step-grandmother.  Appellants argue the family court erred in (1) finding the *Moore*[1] factors inapplicable and not considering the best interests of the child in awarding Father custody, (2) finding Father did not relinquish custody of Minor Child to Appellants and that Appellants were neither the psychological nor de facto custodians of Minor Child, and (3) awarding attorney's fees to Father.  We affirm.

1.  *Moore* Factors and Best Interests

Appellants argue the family court erred in finding the *Moore* factors inapplicable based on Father's fitness and failing to consider the best interests of Minor Child in awarding custody to Father.  We disagree.  "It is well-settled that parents have a protected liberty interest in the care, custody, and control of their children.  This is a fundamental right protected by the Due Process Clause." *Camburn v. Smith*, 355 S.C. 574, 579, 586 S.E.2d 565, 567 (2003) (quoting *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000)).  This presumption can only be overcome by clear and convincing evidence showing either that the parent is unfit or that compelling circumstances exist to justify government interference in the parental decision. *Id.* "[W]e recognize[ ] the superior rights of a natural parent in a custody dispute with a third party.  Once the natural parent is deemed fit, the issue of custody is decided." *Kay v. Rowland*, 285 S.C. 516, 517, 331 S.E.2d 781, 782 (1985).  In *Kay*, our supreme court "placed a substantial burden on any third party attempting to take custody over a biological parent." *Moore*, 300 S.C. at 79, 386 S.E.2d at 458.  South Carolina courts have repeatedly emphasized that in all custody controversies, including those between natural parents and third parties, the best interest of the child remains the primary and controlling consideration. *Id.* at 78-79, 386 S.E.2d at 458.  "[T]he superior rights of the natural parent must yield where the interest and welfare of the child clearly require alternative custodial supervision." *Dodge v. Dodge*, 332 S.C. 401, 410, 505 S.E.2d 344, 348 (Ct. App. 1998); *see* S.C. Code Ann. § 63-15-230(A) (Supp. 2024) ("The court shall make the final custody determination in the best interest of the child based upon the evidence presented.").  Our supreme court in *Moore* outlined certain criteria for a court to apply when a natural parent seeks to reclaim custody of his or her child

_____

[1] *Moore v. Moore*, 300 S.C. 75, 79, 386 S.E.2d 456, 458 (1989).

after having temporarily relinquished custody to a third party.  300 S.C. at 79-80, 386 S.E.2d at 458.  Beginning with "a rebuttable presumption that it is in the best interest of any child to be in the custody of its biological parent," the court outlined the following four factors:

> (1) The parent must prove that he is a fit parent, able to properly care for the child and provide a good home.
>
> (2) The amount of contact, in the form of visits, financial support or both, which the parent had with the child while it was in the care of a third party.
>
> (3) The circumstances under which temporary relinquishment occurred.
>
> (4) The degree of attachment between the child and the temporary custodian.

*Id.*  (Internal citations omitted).

While the court's order first held the *Moore* factors to be inapplicable, it then addressed each factor and made a factual finding.  Similarly, the court questioned whether the best interest of the child analysis was even necessary due to the *Moore* factors being inapplicable.  Despite these statements in the order, we find the court nevertheless conducted the requisite analysis for each.[2]  In analyzing the first

---

[2] Additionally, Appellants attempt to liken this case squarely to *Alukonis v. Smith*, 431 S.C. 41, 846 S.E.2d 600 (Ct. App. 2020); however, we find it is readily distinguishable.  First, in *Alukonis*, the biological mother was deceased.  431 S.C. at 47, 846 S.E.2d at 603.  Because one biological parent was absent from the child's life, the grandfather was capable of reaching psychological parent status and he did.  Here, both biological parents are alive and involved in Minor Child's life.  Next, while the family court in *Alukonis* did grant the father primary custody, it also found compelling circumstances to warrant secondary custody to the grandfather.  *Id.* at 49, 846 S.E.2d at 605.  The court found the grandfather provided clear and convincing evidence to establish that, while the natural father was fit, compelling circumstances warranted joint custody.  *Id.*  Here, the court did not find such compelling circumstances and, while Appellants provided some evidence of Father's questionable behavior, we agree with the family court that they did not provide clear and convincing evidence warranting an award of custody to them.

*Moore* factor, Father's fitness, the court acknowledged his employment, sufficient income, and suitable home.  It found Appellants did not show continuous drug or alcohol use or how it detrimentally affected Minor Child.  Father testified his job at Eagle Aviation required him to take drug tests, and the court noted he had not lost his job due to failed drug or alcohol testing.  Therefore, it found Appellants' assertion of drug and alcohol abuse to be undermined.  We agree Appellants did not provide a clear and convincing rebuttal of Father's unfitness.  The family court was in the best position to determine the credibility of the witnesses, and it found Father to be credible.  As to the second factor, the court found there was evidence to show Father has taken advantage of his visitation with Minor Child and provided for her and his older child from an unrelated relationship.  In addressing this point, the court referred to the Guardian ad Litem's report relating to Father's visitation.  As to the third factor, the court found Father never relinquished custody to Appellants because he never had custody to begin with.  Further, the court found Father provided evidence to establish he tried to reclaim Minor Child.  Father may have waited until the filing of this action to formally assert his right to custody; however, it was Mother who originally consented to Minor Child being sent to Appellants upon birth under the Department of Social Services' safety plan.  At that point in time, paternity had not yet been established, and Father was not listed on the birth certificate.  Finally, as to the fourth factor, the court found Minor Child was attached to all the parties involved.  However, it found Minor Child was always aware that Appellants were her grandparents, and Mother and Father were her parents.

Appellants assert that although the family court "paid lip service to the best interests of the child in the Final Order" when analyzing the *Moore* factors and the totality of the circumstances, the court "failed to consider the best interests of the child, and, ultimately issued a ruling that was against the weight of the evidence and decidedly not in the child's best interests."  We disagree that the court completely failed to consider best interests because inherent in many findings of the order is the consideration of Minor Child's best interests.  Further, the court repeatedly acknowledged the significant role Appellants played in Minor Child's life; but that alone does not mean it is in the best interests of Minor Child to be placed with Appellants over a fit, biological parent.  Finally, we find it important to note the family court's order, in honoring the previous agreement between Mother and Appellants, granted Mother visitation with the condition she is supervised by Appellants.  The previous agreement, which Father was not a party to, granted joint custody to Appellants and Mother, with primary placement with Appellants.

Unlike in other cases dealing with compelling circumstances warranting custody or visitation to non-parents, the threat of complete isolation of Minor Child from Appellants is not at issue here. In considering the superior rights of a biological parent, as well as the significant burden placed on third-parties seeking custody, we find the family court did not err in its findings in favor of Father.

2. Psychological Parents/De Facto Custodians

Appellants argue the family court erred in finding Appellants were not de facto custodians to Minor Child. Appellants likewise argue the family court erred in finding Appellants were not the psychological parents of Minor Child. We disagree and first address the psychological parent analysis.

The court determined Appellants did not rise to the level of psychological parent status. The order acknowledges, and we agree, that our case law does not allow for a third-party to attain psychological parent status when both biological parents are still present in the child's life. *See Middleton v. Johnson*, 369 S.C. 585, 598, 633 S.E.2d 162, 169 (Ct. App. 2006) ("[W]hen both biological parents are involved in the child's life, a third party's relationship with the child could never rise to the level of a psychological parent, as there is no parental void in the child's life."). The family court found both parents to be involved in Minor Child's life; therefore, Appellants could never reach psychological parent status. We find the court did not err when it found Appellants were not the psychological parents of Minor Child.

We next address the family court's finding that Appellants were not de facto custodians to Minor Child. Our legislature has provided a test to determine if a party is a de facto custodian, which "provides for the best interests of the child to prevail by allowing visitation and custody rights to third parties when justified[.]" *Alukonis*, 431 S.C. at 56, 846 S.E.2d at 608. "The statute balances the third party's rights against the superior rights of natural parents by requiring third parties to prove by clear and convincing evidence that a natural parent is unfit or that other compelling circumstances warrant third-party custody or visitation." *Id*. at 56-57, 846 S.E.2d at 608-09. The statute states:

> (A) For purposes of this section, "de facto custodian" means, unless the context requires otherwise, a person who has been shown by clear and convincing evidence to have been the primary caregiver for and financial supporter of a child who:

(1) has resided with the person for a period of six months or more if the child is under three years of age; or

(2) has resided with the person for a period of one year or more if the child is three years of age or older.

Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child must not be included in determining whether the child has resided with the person for the required minimum period.

(B) A person is not a de facto custodian of a child until the court determines by clear and convincing evidence that the person meets the definition of de facto custodian with respect to that child.  If the court determines a person is a de facto custodian of a child, that person has standing to seek visitation or custody of that child.

(C) The family court may grant visitation or custody of a child to the de facto custodian if it finds by clear and convincing evidence that the child's natural parents are unfit or that other compelling circumstances exist.

....

(E) If the court has determined by clear and convincing evidence that a person is a de facto custodian, the court must join that person in the action as a party needed for just adjudication under the South Carolina Rules of Civil Procedure.

S.C. Code Ann. § 63-15-60 (2010).

The court's order did not find clear and convincing evidence to support Appellants' claim that Minor Child resided in their home for the statutorily required time period to become de facto custodians.  The family court acknowledged that, even if it were to find clear and convincing evidence that Minor Child resided with Appellants for the statutorily required time period, that finding alone would not be enough to support an award of custody to Appellants because the court nevertheless found Father fit and it did not find compelling circumstances warranting an alternative determination.  While we acknowledge Appellants may

fit the statutory definition of a de facto custodian, that alone is insufficient to automatically warrant custody or visitation.  *See Dendy v. Gamble*, 445 S.C. 367, 380, 914 S.E.2d 165, 172 (Ct. App. 2025) (finding "meeting the statutory definition of de facto custodian does not automatically warrant custody or visitation—the family court still has the discretion to grant visitation or custody but only if clear and convincing evidence shows that a child's natural parents are unfit or that other compelling circumstances exist.").  Because we find Appellants failed to meet their burden of proving Father's unfitness or compelling circumstances, satisfaction of the statutory requirements defining de facto custodians is not enough to warrant awarding Appellants custody.  Accordingly, we affirm the family court's finding that Appellants were neither the psychological parents nor the de facto custodians warranting custody of Minor Child.

3.  Attorney's Fees

Appellants argue the family court erred in awarding attorney's fees to Father.  In awarding attorney fees, the court should consider the parties ability to pay their own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the fee on each party's standard of living.  *E.D.M. v. T.A.M.,* 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).  In determining the amount of attorney fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services.  *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).  Consistent with our affirmance of the award of custody to Father, we also agree the family court's analysis of the requisite factors supported the attorney's fees award.  Accordingly, we affirm.  *See Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988) (holding the decision whether to award attorney fees is within the sound discretion of the family court, the exercise of which will not be overturned absent a showing of abuse.).

Based on the foregoing, the order of the family court is

**AFFIRMED.**

**THOMAS, HEWITT, and CURTIS, JJ., concur.**