2275

Carlos SANDERS and Lisa Marie Sanders, Appellants v. Grace EMERY, Elmer Rice and Harley Bond Rice, Respondents.

(452 S.E. (2d) 636)

Court of Appeals

*Adam Fisher, Jr.,* Greenville, *for appellants.*

*Susan Cobb Singleton* and *Andrea B. Williams,* Greenville, *for respondents.*

*Guardian ad Litem: P. Joyce McCarrel,* of Travelers Rest.

Heard Nov. 3, 1994.

Decided Dec. 19, 1994.

HOWARD, Acting Judge:

Carlos and Lisa Marie Sanders brought this action seeking a return of custody of their child, Diana. In previous proceedings, custody had been placed with Diana's maternal grandmother, Grace Emery, who at the time of this action was unable to care for the child. Diana's great-grandparents, Elmer Lee Rice and Harley Bond Rice, also sought custody. The trial court awarded custody to the great-grandparents. The parents appealed. We reverse and remand.

Diana was born on December 18, 1988, and is the first child of Carlos and Lisa Marie Sanders. In early 1989 Carlos and Lisa Marie separated. At that time, Lisa Marie was 19 years old and Carlos was 22. During the separation, Carlos pled guilty to criminal sexual conduct with a fourteen year old and received a sentence of incarceration. He served three months and was then paroled. Also following the separation, Lisa Marie attempted to give Diana to neighbors because of her inability to care for the child.

As a result of Lisa Marie's actions, the Department of Social Services (DSS) intervened and initially placed Diana in the care of the paternal grandparents. Thereafter, the maternal grandmother and the great-grandparents sought custody of Diana. At the time this initial custody case was heard, DSS was dismissed as a party by consent because a return of custody to Carlos and Lisa Marie was not an issue. The court found Lisa Marie to be borderline mentally retarded, emotionally immature and not capable of caring for Diana. The court also noted Lisa Marie was working very hard with DSS and other agencies by attending parenting classes and other coping and educational programs in an effort to "eventually" regain custody. Carlos was by that time also attending parenting classes, having reconciled with Lisa Marie.

The court ultimately determined Diana's maternal grandmother should have custody, noting "the best scenario would be for the child to be with her parents, and if the parents continue to work diligently and the grandparents assist them in

their effort, this occurrence will hopefully take place in the not too distant future."

In 1992 Carlos and Lisa Marie obtained an order granting them unsupervised visitation with Diana. In the 1992 order, the court relied in part on the testimony of Mary Foster, a licensed social worker and counselor. Foster indicated that Lisa Marie had continued to participate in parenting classes. Foster also testified she had observed Lisa Marie visiting with Diana and observed her with her second child, Jessica, then eight months old. Foster stated she had no further reservations about Lisa Marie's capabilities to adequately care for Diana in an unsupervised surrounding. The court awarded unsupervised visitation from 6:00 p.m. on Friday or Saturday (to correspond with Carlos' work schedule) until 9:00 a.m. the following morning, and visitation each Tuesday from 9:00 a.m. until 1:00 p.m.

Carlos and Lisa Marie brought the present custody action after the maternal grandmother was hospitalized for psychiatric reasons. They now have two other children, Jessica, who was two years old at the time of the hearing, and Micah, who was two months old. The Rices, Diana's great-grandparents, have cared for Diana during the two years prior to the hearing. At the time of the hearing, Mrs. Rice was 71 years old, and Mr. Rice was 74 years old.

The trial court awarded custody to the great-grandparents. The court acknowledged a presumption in favor of custody to natural parents, but found the presumption rebutted by factual findings in favor of the great-grandparents. The court then applied the four factors set forth in *Moore v. Moore,* 300 S.C. 75, 386 S.E. (2d) 456 (1989) for determining a custody dispute between natural parents and a third party. The court concluded the welfare and best interests of Diana required placing custody with the great-grandparents, although specifically declining to find the parents unfit.

In an action on appeal from the family court, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Epperly v. Epperly,* 312 S.C. 411, 440 S.E. (2d) 884 (1994). This broad scope of review does not require us to disregard the findings of the trial judge, who saw and heard all the witnesses, nor does it relieve the appellants of the burden of convincing this

court that the family court committed error. *Skinner v. King*, 272 S.C. 520, 252 S.E. (2d) 891 (1979); *Bramlett v. Davis*, 289 S.C. 85, 344 S.E. (2d) 867 (Ct. App. 1986). We recognize the trial judge in this case was faced with a difficult decision. Upon review, however, we are convinced that improper weight was accorded to the present relationship which the great-grandparents enjoy with Diana, and insufficient weight was given to the strong presumption favoring the return of custody to the home of fit biological parents.

The best interest of the child is always the primary consideration in this type of proceeding. *Moore*, 300 S.C. 75, 386 S.E. (2d) 456; *Peay v. Peay*, 260 S.C. 108, 194 S.E. (2d) 392 (1973); *Koon v. Koon*, 203 S.C. 556, 28 S.E. (2d) 89 (1943). Where the issue of custody arises with regard to third persons, there is a rebuttable presumption which favors placing custody with the biological parents. *Moore*, 300 S.C. 75, 386 S.E. (2d) 456; *Kay v. Rowland*, 285 S.C. 516, 331 S.E. (2d) 781 (1985); *Cook v. Cobb*, 271 S.C. 136, 245 S.E. (2d) 612 (1978). In *Moore* our Supreme Court characterized the *Rowland* decision as placing "a substantial burden on any third party attempting to take custody over a biological parent." 300 S.C. at 79, 386 S.E. (2d) at 458. *Moore* quotes *Rowland* as recognizing "the superior rights of a natural parent in a custody dispute with a third party. Once the natural parent is deemed fit, the issue of custody is decided." *Id.* (quoting *Rowland*, 285 S.C. at 517, 331 S.E. (2d) at 782).

In child custody matters, the public policy of this state is to reunite parents and children. S.C. Code Ann. § 20-7-20(D) (1985); *Hopkins v. South Carolina Dep't of Social Servs.*, 313 S.C. 322, 437 S.E. (2d) 542 (1993). In *Moore*, the court established the following criteria to consider in making custody determinations when a parent seeks to reclaim custody:

> 1) The parent must prove that he [or she] is a fit parent, able to properly care for the child and provide a good home.
> 2) The amount of contact, in the form of visits, financial support or both, which the parent had with the child while it was in the care of a third party.
> 3) The circumstances under which temporary relinquishment occurred.

4) The degree of attachment between the child and the temporary custodian.

300 S.C. at 79-80, 386 S.E. (2d) at 458 (citations omitted).

It is important in the evaluation of the relevant criteria in each case to remember the context in which they are framed. As stated in *Moore*, "Since the paramount consideration of the courts is the welfare of the child, *the dilemma is how to assure that parents who temporarily relinquish custody for the child's best interest can regain custody when conditions become more favorable.*" 300 S.C. at 79, 386 S.E. (2d) at 458 (emphasis added). The question, then, is not simply who has the most suitable or stable home environment at the time of the hearing. Rather, we must ask if the circumstances in this case, analyzed with the criteria set forth in *Moore*, overcome the presumption that a return of custody to the biological parent is in the best interest of the child.

Applying this analysis, we conclude custody of Diana should be returned to Carlos and Lisa Marie Sanders.

As to the first *Moore* criterion, the family court specifically declined to find the parents unfit. While the court made reference to Lisa Marie's "mental limitations," such are not borne out by the record. There is no scientifically based evidence of limitation, and her testimony belies such a finding. Both parents have attended parenting classes, Lisa Marie attending for four years. This dedication to learning appropriate parenting skills is evident not only from the four-year history of consistent attendance, but also through the previous court orders citing the testimony of social workers who have worked with Lisa Marie.

Since the early difficulties which led to the loss of custody, Carlos and Lisa Marie have taken positive steps to rehabilitate themselves. Carlos has worked steadily for over three years at the same job, supporting himself, Lisa Marie, and their two other children. They have purchased a home, and the testimony established it was maintained as a clean and healthy environment. The supervising DSS authorities have determined Carlos and Lisa Marie pose no threat of abuse or neglect, and they have closed their file on this home. We agree with the family court that the parents are not unfit.

The second factor is that of contact with the child. The only analysis we are able to discern regarding this criterion in the family court's order is the finding that the parents had recently increased their contact with the child, but child support was not paid voluntarily. In our view, this finding fails to recognize the positive. Visitation was restricted by the family court in the initial proceedings. Thereafter, Carlos and Lisa Marie brought a second action in the family court to dispense with the restriction of supervision. Even then, the order provided set visitation. Interestingly, in the June 23, 1992 order in which the court found that supervision of visitation was unnecessary, the court noted the parents had been "voluntarily contributing child support to Grace Emery although no Order requires them to do so."

Carlos and Lisa Marie have exercised the court-ordered visitation on a regular basis. Any negative connotation derived from a failure to expand visitation does not, in our opinion, take into account the realities of their circumstances. Lisa Marie does not drive. She must rely upon Carlos or others for transportation. Carlos works a full week, including shift work. Also, the parents have an infant and a toddler to care for on a daily basis. Under these circumstances, compliance with the visitation provided by the family court in its prior order is a positive factor to be considered.

The family court concluded as a result of the circumstances surrounding the initial relinquishment of custody, the third factor, that a return of custody to Carlos and Lisa Marie was contra-indicated. While we agree those circumstances rendered them unfit at the time, the present circumstances reflect rehabilitation.

Finally, the court evaluated the degree of attachment between the child and the temporary custodian, concluding that a close relationship had developed. The court noted the observations of the guardian *ad litem* that Diana was openly affectionate to others in the waiting room of family court, but withdrawn with her mother. However, the evidence supports a finding that Diana shares a happy relationship with her biological parents. It is commendable that the Rices have nurtured a bond of trust and love with Diana. It is, however, to be expected where they have had the daily care of the child for

two years. As stated in *Moore*, "custody should not be subject to change because of adverse possession." 300 S.C. at 81, 386 S.E. (2d) at 459.

The more pertinent question is whether this relationship is such as to render it in the best interest of Diana to give custody to third parties considering all of the circumstances, including the young age of Diana and the advanced age of the Rices. Viewed in this light, the close relationship by itself or in combination with other *Moore* criteria is not sufficient to overcome the presumption in favor of the biological parents.

For the foregoing reasons, the order of the family court is reversed, and this case is remanded for a determination of visitation privileges to be accorded to the Rices.

Reversed and remanded.

HOWELL, C.J., and SHAW, J., concur.