498 S.E.2d 680

**Forest Todd HARRISON, Sr., Appellant,**

**v.**

**Peggy D. BALLINGTON and Lewis B. Ballington, Respondents.**

**In Re Forest Todd HARRISON, Jr., a minor under the age of fourteen.**

**No. 2797.**

Court of Appeals of South Carolina.

Heard Jan. 7, 1998.

Decided Feb. 23, 1998.

Rehearing Denied April 23, 1998.

Walter H. Smith, Columbia, for appellant.

G. Robin Alley, Isaacs, Alley & Harvey, Columbia, for respondents.

Patrick John Frawley, of Nicholson, Davis, Frawley, Anderson & Ayer, Lexington, Guardian ad Litem.

HUFF, Judge:

This is a child custody dispute between appellant, Forest Todd Harrison, Sr. (Todd), and appellant's mother and stepfather, Peggy and Lewis Ballington (the Ballingtons), over appellant's son, Forest. The trial judge ordered that custody of Forest remain with the Ballingtons. Todd appeals. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Forest was born on August 27, 1987 to the marriage of Todd Harrison and Kathy Hudson Harrison. Todd and Kathy

separated on January 18, 1989 and were divorced by decree of the family court dated March 27, 1990. Pursuant to the March 1990 decree, Kathy was awarded custody of the minor child, subject to a fixed schedule of visitation in favor of the father. On August 11, 1990, Kathy died suddenly after a brief illness. Upon the mother's death, the Ballingtons took possession of the child. Shortly thereafter, the Ballingtons instituted an action against Todd seeking custody of the child. Subsequently, the parties reached an agreement which was adopted by the family court by order dated February 22, 1991. Pursuant to that agreement, the Ballingtons were granted custody of the child and Todd was awarded limited visitation. This visitation was to increase over the months following the issuance of the order. The order further provided the father was to make weekly child support payments and to enroll in safe parenting classes. It also required all the parties to submit to psychological evaluation in order to determine the effect of visitation on the child. In February 1992, Todd's visitation was reduced for failure to comply with the court ordered psychological evaluation. Subsequently, however, Todd was awarded increased visitation, including overnight stays.

The present action was instituted by Todd on August 6, 1992, seeking, among other things, an order granting him custody of the child, based in part on changed circumstances. He also asserted in his complaint that he was entitled to an order granting him custody because he is the child's natural father and is a fit parent. The Ballingtons answered and counterclaimed, generally denying the allegations contained in the father's complaint and seeking attorney fees and costs and an increase in child support.

By order dated May 20, 1996, the family court judge determined that custody should remain with the Ballingtons. He found the case should be analyzed as a modification based on changed circumstances. He held that the four part criteria enunciated in *Moore v. Moore*, 300 S.C. 75, 386 S.E.2d 456 (1989) was inapplicable to the case at hand because *Moore* and its progeny applied only to situations where the biological parent temporarily relinquished custody. He found that by voluntarily entering into an agreement relinquishing custody of his son, Todd waived his priority status accorded by *Moore*.

The final order made no mention of the agreement being of a temporary nature. He thus found the proper analysis of the case was under a change of circumstances. While the trial judge determined Todd had proven a substantial change in circumstances, the changes were not substantial enough to warrant a change of custody from the Ballingtons. The father appeals.

## LAW/ANALYSIS

■ Todd contends the trial judge erred in determining this action should be treated as a change of circumstances case instead of a case subject to the criteria set forth in *Moore*, based on the fact that he is a biological parent seeking to recover custody of his son from third parties. We agree.

We first note that the final order awarding custody to the Ballingtons makes no mention as to whether the custody award is intended to be temporary. It simply approves an agreement between the parties which awarded "full custody, care and control of the minor child" to the Ballingtons, with specific visitation reserved for Todd. Nowhere does the order provide that Todd was permanently relinquishing custody of his son or that he waived his priority status as a biological parent to reclaim custody from a third party. Further, a careful reading of the parties' initial agreement which led to the order of custody, reveals that the parties contemplated the eventual return of the child to the father. In particular, the agreement states:

> I, Forest Todd Harrison, Sr., as the natural father of Forest Todd Harrison, Jr. and my parents, Lewis and Peggy Ballington, agree that it would be in the best interest of Forest Todd Harrison Jr. to be in the custody of Lewis and Peggy Ballington until at such time as Forest Todd Harrison, Sr. is able to support and provide adequate love and care for Forest Todd Harrison, Jr. and that upon appealing to the Courts and according to the courts ruling. It is our fondest wishes [sic] that father and child be reunited.

Although this particular agreement was not incorporated into the final order, it is a clear indication that Todd did not intend to permanently relinquish custody of his son. *See Janasik v. Fairway Oaks Villas Horizontal Property Regime*, 307 S.C. 339, 415 S.E.2d 384 (1992) (a waiver is a voluntary and intentional abandonment or relinquishment of a known right;

a person against whom waiver is asserted must have full knowledge of his rights or all material facts upon which they depend). Accordingly, we find the trial judge erred in finding Todd waived his priority status as accorded by *Moore*. Thus, this case must be analyzed pursuant to *Moore* and its progeny.

 The best interest of the child is always the primary and controlling consideration of the court in all child custody matters. *Moore*, 300 S.C. 75, 386 S.E.2d 456; *Peay v. Peay*, 260 S.C. 108, 194 S.E.2d 392 (1973). However, where the issue of custody arises with regard to third persons, there is a rebuttable presumption which favors placing custody with the biological parent. *Moore*, 300 S.C. 75, 386 S.E.2d 456; *Kay v. Rowland*, 285 S.C. 516, 331 S.E.2d 781 (1985). In child custody matters, the public policy of this state is to reunite parents and children. *Sanders v. Emery*, 317 S.C. 230, 452 S.E.2d 636 (Ct.App.1994). Since the paramount consideration is the welfare of the child, the dilemma of the courts is to assure that parents who temporarily relinquish custody for the child's best interest can regain custody when conditions become more favorable. The court should consider the following criteria in making custody determinations when a natural parent seeks to reclaim custody of his child:

1) The parent must prove that he is a fit parent, able to properly care for the child and provide a good home.
2) The amount of contact, in the form of visits, financial support or both, which the parent had with the child while it was in the care of a third party.
3) The circumstances under which temporary relinquishment occurred.
4) The degree of attachment between the child and the temporary custodian.

*Moore*, 300 S.C. 75, 386 S.E.2d 456.

### 1. Fitness as a Parent

 It is important to note, as did the trial judge, that at no time was there a finding by the court that Todd was an unfit parent. The record contains limited evidence on the issue of Todd's fitness at the time of the order granting custody to the Ballingtons. However, there is an abundance of evidence as to numerous positive changes in Todd's life over the years since the Ballingtons took custody. The trial judge found, and the record supports, that since the prior order, Todd has

remarried, moved into a home, secured steady employment, and improved his financial situation. The trial judge found Todd's current wife is a stabilizing influence in his life, that Todd has achieved a degree of stability in his personal life, and that he has developed a close relationship with the minor child, Forest. Indeed, the record shows Todd has done an exceptional job as a stepfather to his wife's daughter, Melinda, to the extent that Melinda's natural father testified that he could not "have asked for somebody to be a better stepfather" for his child. Accordingly, we find there is substantial evidence as to Todd's fitness as a parent.

### 2. Contact in the Form of Visits and Financial Support

It is undisputed by the record that Todd regularly and continuously maintained contact with Forest. Todd sought and obtained, through court order, extended visitation with the child, through which father and son developed a close relationship. It is equally clear that Todd was ordered to pay child support and there appears to be no complaint from the Ballingtons that he failed to comply with that order.

### 3. Circumstances of Temporary Relinquishment

The circumstances under which custody was relinquished to the Ballingtons also militates in favor of Todd. The trial judge found that upon the death of Kathy, the Ballingtons and Kathy's mother decided it would be best for Forest not to visit with Todd so close to Kathy's death. When Todd arrived at the Ballington's to pick up his child, the Ballingtons refused his request. Mrs. Ballington subsequently removed the child from the state without the knowledge or consent of Todd, further precluding visitation. Thereafter, Mr. Ballington negotiated the return of visitation with Todd in exchange for Todd giving up custody. Three days after Kathy's death, the Ballingtons brought a custody action against Todd. Todd testified that his mother had taken his son out of the state and Mr. Ballington informed him "that they weren't here and that they wouldn't be coming back until I signed the agreement."

### 4. Degree of Attachment Between Child and Temporary Custodian

The record clearly shows a strong bond has developed between Forest and the Ballingtons. However, the mere

existence of such a bond is an inadequate ground to award custody to a third party. *See Moore,* 300 S.C. 75, 386 S.E.2d 456. Further, the record clearly establishes a close bond has developed between Forest and Todd, as well. An expert witness called by the guardian ad litem testified the bond between Forest and Todd was no less than that between Forest and the Ballingtons.

## CONCLUSION

■ The question in a child custody case such as this is not simply who has the most suitable or stable home environment at the time of the hearing. Rather, we must determine if the circumstances in the case, as analyzed with the criteria set forth in *Moore,* overcome the presumption that a return of custody to the biological parent is in the best interest of the child. *Sanders v. Emery,* 317 S.C. 230, 452 S.E.2d 636. Accordingly, the order of the family court is reversed and custody of Forest is awarded to his father, Forest Todd Harrison, Sr.

**REVERSED.**

CONNOR and ANDERSON, JJ., concur.