GEATHERS, J.:
*132 **619 This is a child custody dispute between Nataschja Urban and family friends, Leo Kerscher and Mary Crew, over Urban's minor daughter (Child). Urban appeals the ruling of the family court granting custody of Child to Kerscher and Crew. Urban argues the factors outlined in Moore v. Moore , 300 S.C. 75, 386 S.E.2d 456 (1989) govern and militate the return of Child to her custody. Alternatively, Urban argues she has met the higher burden of demonstrating a substantial change in circumstances warranting the return of Child to her custody.[1] We reverse and remand.
**620 FACTS/PROCEDURAL HISTORY
Urban and Jeffrey Poston were in a romantic relationship resulting in the birth of Child in October 2009. Urban and Poston never married, and until May 2014, Urban had sole custody of Child. On May 16, 2014, Urban left Child in the care of family friends, Kerscher and Crew, in Orangeburg, South Carolina, while Urban left to pursue and secure a permanent home and employment in Pennsylvania. At the time, Urban intended for Child to stay with Kerscher and Crew only for the summer of 2014. Urban's Pennsylvania employment fell through after a week, and she relocated to Mississippi, where she worked for a few months at a convenience store.
Prior to leaving Child with Kerscher and Crew, Urban signed a letter that purported to allow them to care for Child's medical and educational needs in Urban's absence. However, Crew claimed the letter was ineffectual because her last name was incorrectly stated and the letter could not be notarized. As a result, on June 11, 2014, while Urban was still in Mississippi, Kerscher and Crew filed a complaint seeking permanent custody of Child. Specifically, Kersher and Crew requested "temporary and permanent custody of [Child], which they need[ed] for purposes of educating [Child] and providing for her medical needs." Urban was served with the complaint and filed an answer agreeing to let Kerscher and Crew have custody of Child.[2] On September 5, 2014, the family court held a final hearing on the complaint for custody and issued its final order on September 16, 2014, granting Kerscher and Crew permanent custody. Urban did not attend the final hearing, and despite the court's reference to Urban's Mississippi residence, Urban had returned to South Carolina in August.
Two months later, on November 14, 2014, Urban filed a complaint seeking the return of Child to her custody. In April 2015, Urban filed a motion for temporary relief, seeking custody of Child during litigation. The family court held a hearing on the motion in June 2015 and issued its order maintaining Child's custody with Kerscher and Crew but granting Urban visitation.
**621 The final hearing was held in March 2016, and the court issued its order the following month. The court declined to return custody of Child to Urban but continued to allow Urban visitation. The court also required the child support being paid by Child's father to be sent to Kerscher and Crew. This appeal followed.
ISSUES ON APPEAL
1. Did the family court err in granting custody to third parties over a natural parent?
2. Did the family court err in finding there was not a substantial change in circumstances warranting a change in custody?
STANDARD OF REVIEW
"[T]he proper standard of review in family court matters is de novo ...."
*133 Stoney v. Stoney , Op. No. 27758, 422 S.C. 593, 813 S.E.2d 486, 2018 WL 2145094 (S.C. Sup. Ct. filed April 18, 2018) (Shearouse Adv. Sh. No. 16 at 11); Lewis v. Lewis , 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). In a de novo review, the appellate court is free to make its own findings of fact but must remember the family court was in a better position to make credibility determinations. Lewis , 392 S.C. at 385, 709 S.E.2d at 651-52. "Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed." Ashburn v. Rogers , 420 S.C. 411, 416, 803 S.E.2d 469, 471 (Ct. App. 2017). On the other hand, evidentiary and procedural rulings of the family court are reviewed for an abuse of discretion. Stoney , Op. No. 27758 (Shearouse Adv. Sh. No. 16 at 10, n.2).
LAW/ANALYSIS
The family court denied Urban's petition for custody by applying two competing analyses-finding Urban had not met the factors established in Moore v. Moore , 300 S.C. 75, 386 S.E.2d 456 (1989) or the higher burden of demonstrating a substantial change in circumstances. Urban argues the family **622 court should have applied only the Moore factors but also contends she has met the burden of proof under either theory. We find the Moore factors govern exclusively.
I. Appropriate Standard
Our supreme court in Moore outlined certain criteria for a court to apply when a natural parent seeks to reclaim custody of his or her child after having temporarily relinquished custody to a third party. 300 S.C. at 79-80, 386 S.E.2d at 458. Beginning with "a rebuttable presumption that it is in the best interest of any child to be in the custody of its biological parent," the court outlined the following four factors:
(1) "[t]he parent must prove that he [or she] is a fit parent, able to properly care for the child and provide a good home";
(2) "[t]he amount of contact, in the form of visits, financial support[,] or both, [that] the parent had with the child while [he or she] was in the care of a third party";
(3) "[t]he circumstances under which temporary relinquishment occurred"; and
(4) "[t]he degree of attachment between the child and the temporary custodian."
Id. The question is not who has the most suitable home at the time of the hearing but whether circumstances "overcome the presumption that a return of custody to the biological parent is in the best interest of the child." Sanders v. Emery , 317 S.C. 230, 234, 452 S.E.2d 636, 638-39 (Ct. App. 1994).
The Moore court found these factors best addressed the dilemma between safeguarding the welfare of a child and ensuring "parents who temporarily relinquish custody for the child's best interest can regain custody when conditions become more favorable." 300 S.C. at 79, 386 S.E.2d at 458. The court reasoned a parent should be able to regain custody by showing the condition requiring relinquishment has been resolved. Id. at 81, 386 S.E.2d at 459. The court further noted a third party should not be awarded custody of a child over a biological parent through "adverse possession." Id.
Because Moore is limited to situations involving the temporary relinquishment of custody to a third party, it stands to **623 reason that Moore would not apply when custody of a child is transferred permanently, involuntarily, or to the other natural parent. See, e.g. , Baker v. Wolfe , 333 S.C. 605, 610, 510 S.E.2d 726, 729 (Ct. App. 1998) (finding the Moore factors did not apply because a mother voluntarily relinquished custody of her children to the children's father, not a third party). Here, it is undisputed Urban voluntarily transferred custody of Child to third parties, Kerscher and Crew. The question remains, however, whether Urban's relinquishment was temporary or permanent.
On one occasion, this court has addressed the temporary nature of a biological parent's relinquishment of custody to a third party. See Harrison v. Ballington , 330 S.C. 298, 302, 498 S.E.2d 680, 682 (Ct. App. 1998). In Harrison , a father and mother divorced, and the mother had sole custody of their son. Id. at 301, 498 S.E.2d at 681. Six months later, the mother passed away, and the child's grandparents took physical custody of the child. Id. , 498 S.E.2d at 681-82. The grandparents *134 filed an action seeking custody of the child, and the parties reached an agreement, which the family court adopted, granting the grandparents custody and allowing the father visitation. Id. , 498 S.E.2d at 682. A year and a half later, the father filed for legal custody of the child based on changed circumstances. Id. This court determined the family court erred in applying a changed-circumstances analysis because the family court order did not specify the father's relinquishment was permanent or that the father "waived his priority status as a biological parent to reclaim custody"; and, the agreement upon which the order was based indicated the parties had contemplated the eventual return of the child to the father. Id. at 302, 498 S.E.2d at 682-83. Therefore, the Moore factors applied. Id. at 303, 498 S.E.2d at 683.
We interpret Harrison as allowing for an examination of the circumstances surrounding relinquishment to determine the nature of the relinquishment, with particular focus on the biological parent's intent. Id. at 302-03, 498 S.E.2d at 682-83 (examining the initial custody agreement, which was not incorporated into the order, and determining the father never intended to permanently relinquish custody or waive "his priority status as a biological parent to reclaim custody"). We find this reading of Harrison best comports with our state's **624 public policy of reuniting children with their families in timely manner and this court's duty to zealously safeguard the rights of minors. See S.C. Code Ann. § 63-1-20(D) (2009) ("It is the policy of this [s]tate to reunite the child with his family in a timely manner, whether or not the child had been placed in the care of the [s]tate voluntarily."); Harrison , 330 S.C. at 303, 498 S.E.2d at 683 (stating the public policy of South Carolina, in child custody disputes, is to reunite children with their parents); see also S.C. Dep't of Soc. Servs. v. Roe , 371 S.C. 450, 463, 639 S.E.2d 165, 172 (Ct. App. 2006) ("The duty to protect the rights of minors and incompetents has precedence over procedural rules otherwise limiting the scope of review ....").
Additionally, examining the circumstances surrounding relinquishment and focusing on the biological parent's intent, even in the face of an award of permanent custody, reinforces the repeated recognition by our supreme court and the Supreme Court of the United States of a biological parent's fundamental liberty interest in "the companionship, care, custody, and management of his or her children." Santosky v. Kramer , 455 U.S. 745, 758, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (quoting Lassiter v. Dep't of Soc. Servs. , 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) ); Moore , 300 S.C. at 79, 386 S.E.2d at 458 ("[T]his [c]ourt [has] placed a substantial burden on any third party attempting to take custody over a biological parent and '... recognize[s] the superior rights of a natural parent in a custody dispute with a third party.' " (quoting Kay v. Rowland , 285 S.C. 516, 517, 331 S.E.2d 781, 782 (1985) ) ); cf. Ex parte Reynolds , 73 S.C. 296, 303, 53 S.E. 490, 492 (1906) ("Those who receive children from parents without the deed provided by statute, relying upon estoppel of the parents, are charged with notice that the presumption is very strong that a right so precious as that of a parent to a child will not be unconditionally given away except for very cogent reasons ....").
Accordingly, pursuant to our interpretation of Harrison , we find Urban's custody dispute is governed exclusively by the Moore factors. Although the family court's 2014 order awarded "permanent" custody to Kerscher and Crew, the record on appeal does not establish that Urban waived her priority status as a biological parent to have custody of Child returned and the circumstances surrounding relinquishment **625 indicate the parties contemplated the eventual return of Child. Urban left South Carolina to pursue permanent employment and to establish a home for Child and herself. Prior to leaving, Urban wrote a letter allowing Kerscher and Crew to care for Child in Urban's absence. However, due to Crew's alleged concern that the letter was ineffective, Kerscher and Crew filed a complaint for custody while Urban was in Mississippi. Urban, unrepresented, accepted service and answered the complaint, agreeing to relinquish custody. Urban later testified she thought she was signing a waiver to allow Crew to care for Child in case of emergency. After her out-of-state employment *135 fell through, and three months after she had left the state, Urban returned to South Carolina and attempted to have Child returned. Text messages between Urban and Crew that were read into the record at trial show Crew was willing to return Child if Urban could demonstrate her ability to provide for Child to Crew's satisfaction. Furthermore, the appealed 2016 family court order recognized the temporary duration of Kerscher and Crew's custody of Child, stating Child was supposed to be in their custody only for the summer of 2014. Therefore, Urban's custody dispute is governed by the Moore factors.
II. Moore Factors
1. Fitness as a Parent
"The parent must prove that he [or she] is a fit parent, able to properly care for the child and provide a good home." Moore , 300 S.C. at 79, 386 S.E.2d at 458. In determining the natural parent's fitness, courts consider the quality of the home the natural parent can provide as well as the parent's employment stability. See Dodge v. Dodge , 332 S.C. 401, 411-12, 505 S.E.2d 344, 349 (Ct. App. 1998) (noting the natural parent rented a large, clean home and had stable employment as a property manager). Further, the willingness of a parent's spouse and his or her ability to provide for the child weighs in favor of finding the parent is fit and able to care for the child. Malpass v. Hodson , 309 S.C. 397, 399, 424 S.E.2d 470, 472 (1992). However, the natural parent's history of instability and financial dependence upon others can factor against finding the parent is fit. See Kramer v. Kramer , 323 S.C. 212, 219, 473 S.E.2d 846, 849 (Ct. App. 1996).
**626 Here, the court found Urban was not fit and not able to properly care for Child and provide a good home. The court acknowledged Urban was in a better place-in a clean and stable home with her fiancée Brittany Carter. However, the court was concerned because Urban was unemployed and dependent on her fiancée for financial support and housing. The court also noted Urban was receiving child support from Child's father, Poston, but not passing that on to Kerscher and Crew.
Pursuant to our de novo review, we find Urban is a fit parent, able to properly care for Child and provide a good home. Urban lives with her fiancée in a clean and stable home. Child has her own room and has a good relationship with Urban and Carter. Urban's character references, as discussed in the Guardian ad Litem's report, indicated Urban was a good mother, and no one indicated issues with temper, alcohol, or drugs. Further, during oral argument, the Guardian ad Litem stated that Urban was a fit parent and expressed no concerns with Urban's ability to care for Child. We find the family court gave undue weight to Urban's financial dependence on her fiancée. At the time of the hearing, Urban was unemployed and her fiancée testified she was willing to use her income to support Child and Urban. The family court was concerned with the dependence, but we take an opposite view. Financial dependence on a significant other should not reflect poorly on a natural parent's ability to provide a good home unless the significant other is not in a position to provide financial support. Compare Malpass , 309 S.C. at 399, 424 S.E.2d at 472 (finding a husband's willingness and ability to provide for his wife's child weighed in favor of finding the wife was a fit parent, able to care for the child), with Kramer , 323 S.C. at 219, 473 S.E.2d at 849 (holding neither a mother's past conduct nor her present financial dependence on her husband supported finding she was a fit parent; the husband's $16,000 in child support arrearages did not suggest he was "in a position to provide financial support" for the child).
Additionally, despite Urban's unemployment, she was attending Phoenix University, receiving $2,500 quarterly in financial aid, and receiving child support from Poston. Moreover, we are less concerned than the family court that Urban kept the child support rather than relinquishing it to Kerscher **627 and Crew for two reasons. First, there is evidence in the record that Urban offered to forward the money to Kerscher and Crew but they refused it. Second, Urban has been using that money to specifically provide for Child's needs, and thus, it contributes to Urban's ability to care for Child. Urban used *136 the child support to provide for the care of Child when Child visited Urban, and the Guardian ad Litem's report indicated Child had "her own room[ ] with adequate facilities and toys" at Urban's home. Therefore, we find the first Moore factor weighs in favor of returning custody of Child to Urban.
2. Contact in the Form of Visits and Financial Support
The second Moore factor considers "[t]he amount of contact, in the form of visits, financial support[,] or both, [that] the parent had with the child while [the child] was in the care of a third party." Moore , 300 S.C. at 79, 386 S.E.2d at 458. The more the natural parent visits his or her child and provides financial support, the more likely a court is to return custody to the parent. Compare Dodge , 332 S.C. at 413, 505 S.E.2d at 350 (acknowledging father faithfully exercised his visitation and, while imprisoned, frequently called his children and sent them letters), with Kramer , 323 S.C. at 219, 473 S.E.2d at 849-50 (noting the mother visited once or twice a year over a four-year period, didn't provide financial support, did not send Christmas presents, and never petitioned the court for visitation after the father had acquired custody). Additionally, courts consider whether the third party limited the natural parent's contact with the child or refused financial assistance from the natural parent. See Moore , 300 S.C. at 80, 386 S.E.2d at 459 (noting the third party refused increased financial contribution from the natural parent, limited the natural parent's visitation, and rebuffed the natural parent's attempts to regain custody).
It is undisputed Urban did not visit Child while in Pennsylvania or Mississippi, did not promptly notify Kerscher and Crew of her return to South Carolina in August 2014, and did not relinquish the child support paid by Child's father to Kerscher and Crew. However, even though Urban did not physically visit Child while she was out of state, she spoke with Child on the phone and messaged Crew via phone and social media to check on Child. Considering Urban's financial **628 status, her contact with Child was what she could accomplish within her means. See Dodge , 332 S.C. at 413, 505 S.E.2d at 350 (acknowledging the father frequently called his children and sent them letters while imprisoned). Furthermore, on more than one occasion, Kerscher and Crew would not allow Urban to speak with Child. Despite Urban's failure to promptly notify Kerscher and Crew when she returned to South Carolina in August 2014, Urban frequently contacted Crew through phone and social media, checking on Child's well-being and requesting to talk with or visit Child, but Crew ignored or rebuffed those attempts. After Crew's repeated refusal to allow contact and visitation, Urban filed for custody of Child in November 2014; however, a visitation schedule was not established by the court until June 2015.
Moreover, we find that Urban's failure to forward the child support to Kerscher and Crew does not reflect so poorly on Urban. Similar to our analysis under the first Moore factor, there is evidence Urban offered to forward the child support to Kerscher and Crew, but they refused it, and Urban used the child support to provide for Child when Child visited Urban once she returned to South Carolina. Considering Urban's circumstances and Kerscher and Crew's actions in refusing visitation, we find the second Moore factor weighs in favor of returning custody of Child to Urban.
3. Circumstances of Temporary Relinquishment
In addressing this factor, courts examine whether the circumstances surrounding the relinquishment have been resolved. See Malpass , 309 S.C. at 400, 424 S.E.2d at 472 (noting mother relinquished custody of child while she was a victim of an abusive spouse but had since remarried and was capable of providing for the child); Kramer , 323 S.C. at 220, 473 S.E.2d at 850 (stating this factor weighed against returning custody as mother's relinquishment was markedly different from Moore -she abandoned her child on his first birthday, left the state to pursue a life of her own, and did not contact the child for months).
When Urban left Child with Kerscher and Crew in May 2014, Urban was leaving South Carolina to pursue an employment opportunity *137 in Pennsylvania because she was unemployed, **629 essentially homeless, and did not own a vehicle. At the time of the hearing, Urban had returned to South Carolina and established a home with her fiancée. Although Urban was unemployed,[3] she was attending school, receiving excess financial aid, and her fiancée had committed to supporting her and Child. Urban still did not own a vehicle but had access to her fiancée's vehicle if she needed it. We find the circumstances surrounding Urban's relinquishment of custody have substantially been resolved. Therefore, we find this factor weighs in favor of returning custody of Child to Urban.
4. Degree of Attachment between Child and Temporary Custodian
The fact that a strong bond exists between a third party and a child is not sufficient to award custody to the third party. Harrison , 330 S.C. at 304-05, 498 S.E.2d at 684. Courts will consider whether a third party's actions in limiting the natural parent's contact with the child allowed the bond between the third party and the child to foster. See Moore , 300 S.C. at 80-81, 386 S.E.2d at 459 (noting the existence of strong relationship between the third party and the child is an insufficient ground on which to award permanent custody; especially when that relationship was allowed to flourish due to the third party's overt acts inhibiting "the development of a normal relationship between the natural parent and his child"). Under this factor, a court is more likely to award custody to the third party when the third party is the only parent the child has ever known. Compare Malpass , 309 S.C. at 400, 424 S.E.2d at 472 (finding a child had bonded with his mother despite living with his grandparents), with Kramer , 323 S.C. at 220, 473 S.E.2d at 850 (finding the temporary custodians were the only parents the child had ever known).
Here, the family court's consideration of this factor extended merely to the recognition that Child "is very attached to [Kerscher and Crew] and is thriving in their care." Although we recognize the close degree of attachment between Child and Kerscher and Crew, the "existence of such a bond is an **630 inadequate ground to award custody to" Kerscher and Crew. Harrison , 330 S.C. at 305, 498 S.E.2d at 684. Moreover, unlike Kramer , Kerscher and Crew are not the only parents Child has known. Child considers herself as having two families-one with Urban and Carter and another with Kerscher and Crew. Therefore, we find this factor does not favor granting Kerscher and Crew custody of Child.
We acknowledge Kerscher and Crew are able to provide a good home for Child. However, the question is not who has the most suitable home at the time of the hearing but whether circumstances "overcome the presumption that a return of custody to the biological parent is in the best interest of the child." Sanders , 317 S.C. at 234, 452 S.E.2d at 638-39 ; Harrison , 330 S.C. at 305, 498 S.E.2d at 684 ; see also McCann v. Doe , 377 S.C. 373, 390, 660 S.E.2d 500, 509 (2008) (citing the presumption from Moore that, in custody matters, it is in the best interest of a child to be placed with a biological parent over a third party and determining custody should be returned to a biological parent because the biological parent's consent to adoption was invalid and both parties had "an equal ability to care for the child"). We find the presumption has not been overcome and custody of Child should be returned to Urban.
Furthermore, it is commendable that Urban recognized her previous inability to care for Child and, in good faith, left Child with people willing and able to provide for Child while Urban attempted to better her family's circumstances. Child's custody should not be subject to adverse possession when Urban is a fit parent who has substantially remedied the circumstances surrounding custodial relinquishment. See Moore , 300 S.C. at 81, 386 S.E.2d at 459 ("If a party relinquishes custody in good faith because of some temporary *138 inability to provide for the child, such parent should be able to regain custody upon a showing that the condition [that] required relinquishment has been resolved. Child custody should not be subject to change because of adverse possession."). In conclusion, we reverse the family court's order maintaining custody with Kerscher and Crew and remand for an order granting Urban custody of Child.
REVERSED and REMANDED.
HUFF and MCDONALD, JJ., concur.

Kerscher and Crew did not file a brief in response to this appeal.

Urban's answer was not included in the record on appeal.

At the hearing, Urban indicated she had a job lined up but was waiting for management's final approval before being extended a formal offer of employment.