**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Valerie Lawson, Appellant,

v.

Erin Michelle Smith, Respondent.

Appellate Case No. 2016-000267

———————————

Appeal From Spartanburg County
James F. Fraley, Jr., Family Court Judge

———————————

Unpublished Opinion No. 2019-UP-215
Submitted October 1, 2018 – Filed June 12, 2019

———————————

**REVERSED and REMANDED**

———————————

Donald Loren Smith, of Attorney Office of Donald
Smith, of Anderson, for Appellant.

Kenneth Philip Shabel, of Kennedy & Brannon, P.A., of
Spartanburg, for Respondent.

———————————

**PER CURIAM:** Valerie Lawson (Lawson) appeals the family court's order dismissing her request for a change in custody of her minor daughter (Child). Lawson argues the family court erred by failing to find (1) she was entitled to custody based on the factors outlined in *Moore v. Moore*, 300 S.C. 75, 386 S.E.2d

456 (1989); (2) a substantial change of circumstances warranted a change of custody; (3) reunification was in the child's best interest; and (4) Erin Smith (Erin) in contempt of court for violating the terms of the parties' prior agreement. We reverse and remand.

Lawson had sole custody[1] of Child until March 2012, when she signed a temporary "Limited Power of Attorney for Care of Minor Child(ren)" appointing "Robin/Erin Smith" as the attorney-in-fact for Child. However, only Robin Smith (Robin)[2] signed the contract accepting "the duties, powers and responsibilities" of the power of attorney, and she notarized the contract under her former name, Robin Simmons. Robin was Lawson's counselor at the Department of Social Services (DSS) until she resigned from DSS in 2011. Erin, who is Robin's sister-in-law, was not present when the limited power of attorney was signed and she never spoke to Lawson about her relinquishment of custody. The limited power of attorney empowered the attorney-in-fact with responsibility over Child's health, education, and general welfare with an end date of September 2, 2012.

On May 21, 2012, Erin filed a complaint seeking custody of Child. In the 2014 order after the hearing on Erin's complaint, the court approved and incorporated an agreement entered into by Lawson and Erin. The agreement provided Erin had legal and physical custody of Child and defined Lawson's visitation and child support obligations. The agreement required Lawson to undergo a psychological evaluation, complete any of the evaluation's recommended treatments, and maintain stable housing and employment for ninety days before filing for a change of custody with the family court.

On September 10, 2014, Lawson filed a complaint seeking to modify custody, alleging Erin and Robin "knowingly conspired to gain custody of . . . [C]hild" by abusing both Robin's notary commission and her position as Lawson's DSS counselor. Lawson contended Erin was never a party to the limited power of attorney because she never signed it. She claimed Erin's name was fraudulently added as attorney-in-fact after she signed the contract and without her knowledge. The family court held a final hearing on Lawson's complaint on July 15, 2015. At the hearing, Lawson testified she "never agreed to give . . .[C]hild to Erin Smith."

---

[1] Child's father is not a named party in this case and has never petitioned the family court for visitation or custody.
[2] Although Robin testified she spells her name both as Robin and Robyn, we refer to her as Robin. Robin also uses the surnames Smith and Simmons, her former married name.

She stated she "agreed to give [C]hild to Robin Smith".   Lawson explained that based on how the name was written on the limited power of attorney, she believed Robin's full name was "Robin Erin Smith."  She testified Robin was the notary public, signing her name as Robin Simmons.  She recalled neither the witnesses nor Erin were present at the signing of the limited power of attorney.  Lawson explained that when she signed the limited power of attorney, she believed she was agreeing to give Robin the ability to take Child to the doctor so Lawson would not have to miss school.

Initially, during Lawson's direct and cross examination, the family court disallowed any testimony concerning the limited power of attorney and the circumstances surrounding Lawson's temporary relinquishment of custody.  However, the family court subsequently decided the circumstances surrounding Lawson's relinquishment of custody were relevant and allowed Lawson's counsel to ask questions regarding this on redirect examination.

In its final order, filed August 11, 2015, the family court dismissed Lawson's request for change of custody and ordered the 2014 order remain in effect.  The family court found Lawson "failed to meet her burden of proof to establish a substantial change of circumstances to warrant a change in custody."  In her motion to reconsider pursuant to Rule 59(e), SCRCP, Lawson argued the family court erred by failing to consider the *Moore* factors.  Further, Lawson argued the family court prevented her from making a proper record as it relates to the circumstances under which she temporarily relinquished her rights to custody.  Thereafter, the family court filed an order on January 7, 2016, making findings according to the *Moore* factors.  However, regarding the third *Moore* factor, the circumstances under which temporary relinquishment of Child's custody occurred, the family court found the 2014 order was "an agreement between the parties.  The [family c]ourt previously found there were concerns at the time of removal of custody that [Lawson] was not taking . . . [C]hild to medical appointments."  The family court further found that although it "acknowledge[d] . . . the *Moore* factors seem[ed] to weigh in favor of [Lawson,]" the 2014 order "set out specific circumstances that [Lawson] must accomplish prior to filing an action to regain custody."  It denied Lawson's motion because it found Lawson failed to complete counseling, which the family court determined "to be a prerequisite to filing a new action under the 2014 [o]rder."  This appeal followed.

**STANDARD OF REVIEW**

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[W]hile this court has the authority to find facts in accordance with its own view of the preponderance of the evidence, 'we recognize the superior position of the family court judge in making credibility determinations.'" *Lewis v. Lewis*, 400 S.C. 354, 361, 734 S.E.2d 322, 325 (Ct. App. 2012) (quoting *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011)). "Further, de novo review does not relieve an appellant of his burden to 'demonstrate error in the family court's findings of fact.'" *Id*. (quoting *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655). "Consequently, the family court's factual findings will be affirmed unless appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Id.* (quoting *Lewis*, 392 S.C. at 392, 709 S.E. 2d at 655) (alteration in original).

## LAW/ANALYSIS

### I. THE *MOORE* DOCTRINE

When a natural parent seeks to reclaim custody of his child after having temporarily relinquished custody to a third party, the following factors should be considered:

> 1) The parent must prove that he is a fit parent, able to properly care for the child and provide a good home. 2) The amount of contact, in the form of visits, financial support or both, which the parent had with the child while it was in the care of a third party. 3) The circumstances under which temporary relinquishment occurred. 4) The degree of attachment between the child and the temporary custodian.

*Moore*, 300 S.C. at 79–80, 386 S.E.2d at 458 (internal citations omitted). "The question is not who has the most suitable home at the time of the hearing but whether circumstances 'overcome the presumption that a return of custody to the biological parent is in the best interest of the child.'" *Urban v. Kerscher*, 423 S.C. 615, 622, 817 S.E.2d 130, 133 (Ct. App. 2018) (quoting *Sanders v. Emery*, 317 S.C. 230, 234, 452 S.E.2d 636, 638–39 (Ct. App. 1994)).

> If a party relinquishes custody in good faith because of some temporary inability to provide for the child, such parent should be able to regain custody upon a showing that the condition which required relinquishment has

> been resolved. Child custody should not be subject to
> change because of adverse possession.

*Moore*, 300 S.C. at 81, 386 S.E.2d at 459.

### a. Appropriate Standard

The *Moore* factors exclusively govern this case.  The *Moore* factors apply in cases in which a natural parent seeks to reclaim custody after having temporarily relinquished custody to a third party.  *See id.* ("If a party relinquishes custody in good faith because of some temporary inability to provide for the child, such parent should be able to regain custody upon a showing that the condition which required relinquishment has been resolved."); *Urban*, 423 S.C. at 624–25, 817 S.E.2d at134 (finding the *Moore* factors exclusively governed when the natural parent did not waive "her priority status as a biological parent to have custody of Child returned and the circumstances surrounding relinquishment indicate[d] the parties contemplated the eventual return of Child.").  Although the family court initially refused to allow argument or testimony regarding the limited power of attorney and the circumstances surrounding Lawson's relinquishment of custody, sufficient evidence exists to prove Lawson's relinquishment was temporary and she did not "waive [her] priority status as a biological parent to reclaim custody."  *See Harrison v. Ballington*, 330 S.C. 298, 302, 498 S.E.2d 680, 682 (Ct. App. 1998) (finding the *Moore* factors applied when the father's relinquishment was not permanent and eventual return of the child to the father was contemplated by the parties to the agreement).  Lawson relinquished custody pursuant to the limited power of attorney, signed by Lawson on March 12, 2012.  The document empowered the attorney-in-fact with the responsibility of Child's health, education, and general welfare for the period of March 2, 2012, to September 2, 2012.  Although the contract names Robin and Erin as attorneys-in-fact, only Robin signed the contract accepting "the duties, powers and responsibilities" provided by the limited power of attorney.  Further, the contract was notarized by Robin under the name Robin Simmons, and none of the witnesses were present at the time Lawson signed the contract.  Moreover, Lawson testified she only agreed to relinquish custody to Robin, not Erin.  Notwithstanding the validity of the limited power of attorney or the fact Lawson never intended to relinquish custody to Erin, the limited power of attorney clearly confirms Lawson intended only temporary relinquishment and the parties contemplated Child's return to Lawson.  Thus, because Lawson sought to reclaim custody of Child after temporarily relinquishing custody to a third party, we find the *Moore* factors are controlling.

**b. The Moore Factors**

      1.      Fitness as a Parent

Lawson has satisfied the first *Moore* factor because she has proven she is a "fit parent, able to properly care for . . . [C]hild and provide a good home." *Moore*, 300 S.C. at 79–80, 386 S.E.2d at 458. Beverly Lawson (Beverly), Lawson's adoptive mother, testified Lawson moved into her home in February 2014 and has lived there consistently since. She testified her home is 4,300 square feet with four bedrooms and three bathrooms and is located on her seven acre property. Beverly explained Child has her own room in the house. Frances Stockdale, a family and marriage counselor, testified he did not observe anything to "lead [him] to believe [Lawson] was incapable of caring for . . . [C]hild." Several character witnesses all testified Lawson was a good mother who was capable of taking care of Child. There is no indication Lawson has had any issues with drugs or alcohol, and she does not have a criminal record. Brooks Moss, the guardian ad litem, testified her investigation did not lead her to "believe that [Lawson] was unfit," and "there was no reason to determine her unfitness." Lawson testified she was employed at Tony's Pizzas and Subs as a delivery driver for over a year, where she made five dollars per hour, plus tips, and worked approximately twenty-six to thirty-six hours per week. Finally, the family court found Lawson was not unfit. Accordingly, the record shows Lawson is a fit parent, able to maintain stable housing and employment, and capable of properly caring and providing a stable home for Child. Therefore, we find this factor weighs in favor of granting Lawson custody of Child.

      2.      Contact in the Form of Visits and Financial Support

The second factor, the "amount of contact, in the form of visits, financial support or both, which the parent had with the child while it was in the care of a third party" also weighs in favor of Lawson. *Id.*. The family court found Lawson "visited regularly with . . . [C]hild since the 2014 order." Lawson also took advantage of the expanded visitation allowed under the 2014 order after she began complying with the psychological evaluation recommendations. The family court also found Lawson paid all child support obligations. No evidence in the record exists to show Lawson failed to take advantage of her visitation or provide all child support obligations under the 2014 agreement. Therefore, this factor weighs in favor of returning custody to Lawson.

### 3. Circumstances of Temporary Relinquishment

The third factor, "[t]he circumstances under which temporary relinquishment occurred" weighs in favor of returning custody of Child to Lawson. *Id.* Although in its January 7, 2016 order the family court determined relinquishment occurred at the time of the 2014 order, we find Lawson's relinquishment occurred at the time the limited power of attorney was signed. Lawson testified that at the time of relinquishment, she was very vulnerable and "[she] did the best [she] could for what [she] thought would be best for [her] daughter." She explained she "did not feel as if [Child] needed to move around from house to house with [her.]" She testified she "never agreed to give . . . [C]hild to Erin." She explained she "agreed to give . . . [C]hild to Robin, her former DSS counselor," because she trusted and looked up to her. Lawson believed the limited power of attorney simply allowed Robin to "take . . . [C]hild to the doctor without [her] having to get out of school." Beverly believed the agreement provided Robin the ability to "watch [Child] temporarily for a few months while [Lawson] gained her high school diploma." Lawson recalled neither the witnesses nor Erin were present at the time she signed the limited power of attorney, and she stated Robin notarized the contract using her former name, Robin Simmons. The limited power of attorney specified it remained valid from March 2, 2012, to September 2, 2012, or until revoked by a natural parent. Although Erin testified Lawson did not seek to regain custody of Child until Lawson was served with the complaint, Erin filed her complaint seeking custody on May 21, 2012, less than three months after Lawson relinquished temporary custody. Moreover, Erin acknowledged she never spoke to Lawson about the relinquishment and she knew the arrangement to care for Child was temporary. After the limited power of attorney was signed, Lawson gained steady employment and housing, and attended counseling. Lawson also graduated and obtained her high school diploma. The circumstances resulting in Lawson's relinquishment of custody have substantially been resolved. Therefore, this factor weighs in favor of returning custody of Child to Lawson.

### 4. Degree of Attachment between Child and Temporary Custodian

As to the final *Moore* factor, the "degree of attachment between the child and the temporary custodian", although the family court found Erin had a strong attachment to Child because Child lived with her since she was an infant, we find this factor does not favor granting Erin custody of Child. *Id.*; *see Urban*, 423 S.C. at 629, 817 S.E.2d at 137 ("The fact that a strong bond exists between a third party and a child is not sufficient to award custody to the third party."). Erin testified she

believed it would be detrimental to Child for herself and her other children to be "ripped out of [Child]'s life." However, she also testified she believed "it would be detrimental to [Child] for [Lawson] to be ripped out of her life." Caroline Mittmann, a licensed marriage and family therapist intern, testified that based on her observations, Child was comfortable and engaging with both Erin and Lawson, and referred to both as "mommy." Because Child had a strong bond with both Lawson and Erin, this factor does not favor granting Erin custody of Child.

Accordingly, Erin has not "overcome the presumption that a return of custody to the biological parent is in the best interest of the child." *Sanders*, 317 S.C. at 234, 452 S.E.2d at 638–39. The record shows Lawson is a fit parent who has remedied the circumstances which led to her relinquishment of custody and returning custody to Lawson is in Child's best interest. We find the family court erred in dismissing Lawson's request for a change of custody of Child. Accordingly, custody of Child is returned to Lawson.

## II.   CONTEMPT OF COURT

Lawson argues the family court erred by failing to find Erin in contempt of court for violating the family court's order by preventing Lawson's visitation on Child's birthday. This issue is not preserved for appellate review.

"It is well settled that . . . an appellate court cannot address an issue unless it was raised to and ruled upon by the trial court." *Lucas v. Rawl Family Ltd.P'ship*, 359 S.C. 505, 510–511, 598 S.E.2d 712, 715 (2004). "When the family court does not rule on an issue presented to it, the issue must be raised by a post-trial motion to be preserved for appeal." *Bodkin v. Bodkin*, 388 S.C. 203, 219, 694 S.E.2d 230, 239 (Ct. App. 2010). "Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal." Rule 210(h), SCACR. "[T]he appellant has the burden of providing an adequate record on appeal." *Solley v. Navy Fed. Credit Union, Inc.*, 397 S.C. 192, 214, 723 S.E.2d 597, 608 (Ct. App. 2012).

## CONCLUSION

Accordingly, we find the family court erred in dismissing Lawson's request for change of custody. Appellant Valerie Lawson is awarded custody of Child. We remand to the family court for implementation of a transition plan consistent with this opinion. *See Adoptive Couple v. Baby Girl*, 404 S.C. 490, 493, 746 S.E.2d

346, 347 (2013) ("The matter of transfer of physical custody shall be accomplished in accordance with [Child's] best interest, as determined by the family court.").

**REVERSED and REMANDED.**[3]

**HUFF, SHORT, and WILLIAMS, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.