**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Melanie Shannon Freeman and Edward Freeman, Jr., Appellants,

v.

Erica Woodward and Brandon Lucas, Respondents.

Appellate Case No. 2020-000248

Appeal From York County
Timothy H. Pogue, Family Court Judge

Unpublished Opinion No. 2022-UP-128
Submitted February 1, 2022 – Filed March 23, 2022

**AFFIRMED**

Melinda Inman Butler, of The Butler Law Firm, of Union, for Appellants.

James David Duncan, of Duncan and Nobles LLC, and Syretta R. Anderson, of Anderson Law Firm, both of Rock Hill, for Respondent Erica Woodward.

Brandon Lucas, of Heath Springs, pro se.

**PER CURIAM:** Melanie Shannon Freeman and Edward Freeman, Jr. (collectively, the Freemans) appeal the family court's award of custody of minor child (Child) to Erica Woodward (Mother) and award of attorney's fees and guardian ad litem (GAL) fees. On appeal, the Freemans argue the family court erred by (1) failing to award custody to them when Mother was unfit and it was not in Child's best interest to be placed with Mother and (2) ordering them to pay a portion of Mother's attorney's fees and half of the GAL fees. We affirm.

1. We hold the family court did not err in awarding custody of Child to Mother because the Freemans failed to rebut the presumption that returning custody of Child to Mother was in Child's best interest.[1] *See Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011) (stating that on appeal from the family court, an appellate court reviews factual and legal issues de novo); *Eason v. Eason*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009) ("In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. However, this broad scope of review does not require [an appellate c]ourt to disregard the findings of the family court."); *Moore v. Moore*, 300 S.C. 75, 78-79, 386 S.E.2d 456, 458 (1989) ("The best interest of the child is the primary and controlling consideration of the [c]ourt in all child custody controversies . . . . Nevertheless, there is a rebuttable presumption that it is in the best interest of any child to be in the custody of its biological parent."); *id.* at 79-80, 386 S.E.2d at 458 (explaining the court should consider the following factors when a natural parent seeks to reclaim custody of his or her child after having temporarily relinquished custody to a third party: (1) "the parent must prove that he [or she] is a fit parent, able to properly care for the child, and provide a good home"; (2) "the amount of contact, in the form of visits, financial support or both, which the parent had with the child while it was in the care of a third party"; (3) "the circumstances under which temporary relinquishment occurred"; and (4) "the degree of attachment between the child and the temporary custodian").

First, we hold the family court did not err in finding Mother was fit because Mother lived in the same two-bedroom apartment for over three years, retained the same job for multiple years, advanced to a management position, and showed an ability to properly care for Child by enrolling her in occupational therapy and speech therapy, as well as obtaining assistance with an early interventionist. *See Urban v. Kerscher*, 423 S.C. 615, 625, 817 S.E.2d 130, 135 (Ct. App. 2018) ("In

---

[1] While Brandon Lucas, Child's father, is listed as a party to this case, he voluntarily relinquished his rights to Child prior to trial and did not petition for visitation or custody at trial.

determining the natural parent's fitness, courts consider the quality of the home the natural parent can provide as well as the parent's employment stability.").  Second, Mother made several payments to the Freemans while Child was in their custody and visited Child when the Freemans allowed.  Third, Mother remedied the circumstances surrounding the temporary relinquishment—a criminal domestic violence incident with her ex-boyfriend and Child's positive drug test—by obtaining a permanent restraining order between Child and the ex-boyfriend, completing multiple classes, including a victim's domestic abuse class, parenting classes, and a mental health assessment, and voluntarily obtaining weekly drug tests of her own accord.  *See id.* at 628, 817 S.E.2d at 136 (explaining that in considering the circumstances of temporary relinquishment, "courts examine whether the circumstances surrounding the relinquishment have been resolved").  While Mother experienced drug addiction in the past, the testimony of the witnesses at trial established she remedied the circumstances surrounding the temporary relinquishment of custody.  *See Woodall v. Woodall*, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996) ("Furthermore, the appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the [family] court.").

Fourth, although the record showed Child bonded with the Freemans, testimony at trial established the bond flourished while the Freemans prevented Mother from visiting Child.  *See Moore*, 300 S.C. at 81, 386 S.E.2d at 459 (explaining the existence of a bond between a child and a third party is an inadequate ground to justify awarding custody when the bond was built on the third party's "overt acts which inhibited the development of a normal relationship between the natural parent and his [or her] child").  Based on the foregoing, we hold Mother is a fit parent who remedied the circumstances that led to her temporary relinquishment of custody and returning custody to Mother is in Child's best interest.  *See Alukonis v. Smith*, 431 S.C. 41, 64, 846 S.E.2d 600, 612 (Ct. App. 2020) ("[I]n most circumstances, a . . . third party would find it an insurmountable obstacle to obtain custody of a child over a fit, natural parent.").

2.  We hold the family court did not err by ordering the Freemans to pay a portion of Mother's attorney's fees and costs.  *See Stone v. Thompson*, 428 S.C. 79, 92, 833 S.E.2d 266, 272 (2019) (stating an appellate court "reviews a family court's award of attorney's fees de novo"); *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992) (stating the family court should consider the following factors when determining whether attorney's fees should be awarded: "(1) the party's ability to pay his/her own attorney's fee; (2) [the] beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the

attorney's fee on each party's standard of living").  The testimony at trial indicated both parties accumulated large amounts of attorney's fees when compared to their monthly incomes.  However, the Freemans have a larger monthly income than Mother, the fees and costs would have a greater effect on Mother's standard of living than the Freemans, and Mother obtained beneficial results at trial.

We also hold the family court did not err in ordering the Freemans to pay half of the GAL fees.  *See* S.C. Code Ann. § 63-3-850(B) (2010) (setting forth the following factors to consider when awarding GAL fees: "(1) the complexity of the issues before the court; (2) the contentiousness of the litigation; (3) the time expended by the guardian; (4) the expenses reasonably incurred by the guardian; (5) the financial ability of each party to pay fees and costs; and (6) any other factors the court considers necessary").  Here, the parties engaged in months of litigation, the Freemans had a greater ability to pay the fees than Mother, the GAL's rate was reasonable and in accordance with a court order, and the GAL adequately performed his services.

**AFFIRMED.**[2]

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.